Mr. Justice CATRON
 

 delivered the opinion of the court.
 

 We are called on. to ascertain .thé correctness of an opinion and decree pronounced by the Superior Court of East Florida, by which there was confirmed to certain claimants,- through James Darley, a tract of land containing 23,040 acres. The only question proposed to be examined, regards a location of the land by the decree. Darley solicited the governor of East Florida, in 1817, to grant to him in absolute'property six miles square of land, u at the place called Dunn’s lake, upon the river St. John’s” ; and the grant was. made as solicited. This is the entire description. The river .St. John’s is one of the principal waters of East Florida; and a principal object in its geography, and may therefore be judicially noticed, ás -minor objects have been, in our decisions affecting Spanish claims in the same section of country. • The river is of considerable length, and runs through several lakes ; there is no place on the. river, however, known as Dunn’s lake, so far as we are informed, by the proofs or otherwise ; but there is a considerable lake, well known as “ Dunn’s lake,” lybg near the St. John’s ; it is proved to lie east of the river, nearly parallel with it', and about five miles from the river on an average. The lake iá about fifteen miles long, and three or four miles widé. From the description of the. land solicited, it is difficult to say whether the petitioner asked to have it laid off on the river or on the lake, but the purpose for which the grant was made decides the ambiguity of expression. The object was the erection-of machinery for the sawing of lumber, and the advancement of commerce in the province, from the article of lumber ; and therefore the land was solicited to be laid' dff on the river, for the purpose of establishing machinery, to be propelled by water power. Giving the most favorable intendment to the locality described in the petition and grant, still we can only say, .that the grant was for land on the river, opposite tó the Jake ;. and by further indulging a fayor-able construction, *> as. to limit the territory referréd to'within narrower bounds, hold that the' survey should be made on that side of' the; river next the lakh, and between the lake and the river.This-was obviously the view-tafeen, of the matter by the experienced judge of the Superior Court,' and in.which we concur.
 

 . • The St: John’s river in its genéral course of. northeast makes a large bend ,to the west, opposite to the,upper end of the lake, and there passes;through Lake' St. George, and.by.its meanders lies op
 
 *27
 
 posite to each end and one side of Dunn’s lake. A copy of the plat filed in die land-office, representing the township surveys of that locality, is in the Record as evidence, from which these facts appear ; and also, that the St. John’s lies opposite. Dunn’s lake, by its various bends, for a distance of some thirty miles. This is ■ the base line, on which the survey might front. Then, again, by the Spanish ordinances existing in Florida and governing such surveys, the front on the river could not exceed one-third of . the longitudinal extension back; nor does the description- of “ six miles square” alter the rule' prescribed by the general law. Sibbald’s case, 10 Peters, 313; United States
 
 v.
 
 Hanson, 16 Peters, 201. Governed by these rules, .and with this extent of territory before it, the. Superior Court was called on to identify the land granted, and render, a decree. The difficulty lay in finding a point at which to commence the survey : from .the face of the grant this could not be done, and therefore the court sought aid from the following additional circumstances. Ip December, 1817, Geo. Clarke, the surveyor-general of the province, filed a plat and certificate of survey in his office, purporting to have been made of this grant; but no proof was offered to show that any such survey had ever been made by Clarke on the ground, and the Superior Court expresséd its apprehensions that the survey was fictitious, as appears by the opinion found in the1 record ; yet, as it mignt turn out otherwise on search being made on the ground, and aS the survey might reasonably conform to the calls of-the concession, should landmarks be found, a search and resurvey was ordered, and one was, made and returned to the court by Gould, corresponding as near as might be, in the judgment of the surveyor, to the lines laid down on Clarke’s plat, at the upper end of Dunn’s lake. But no line-marks were'found that had been made by Clarke, and his. plat and certificate^ proved to be merely fictitious ; his work not extending beyond what he had done on paper. As no aid could be derived from this source to direct .the surveyor, Gould, when in the field, he resorted to another; it was this. In the spring of 1818, Darley had-employed McHardy, a private surveyor, to lay off the six miles square of land, with the. aid of Darley, and where he was present. They commenced at the head of Dunn’s lake, and run and marked a line about a mile, and then disagreed4 as to the propriety of making the survey as proposed by Darley; for what particular reason does not appear. - This was all that was ever done in the field previous to the time Gould went on the ground, in July, 1843. Gould took with him Pellicier, who assisted McHardy in marking the line in 1818, for the distance of the mile above spoken of; and finding the marks at that point, Gould commenced the survey on which the decree is founded, and laid off the grant in a square form of six miles to each side, fronting on Dunn’s lake, and extending to St. George’s lake, through, which the river St. John’s passes. The survey has no connection with the St. John’s river, further than that
 
 *28
 
 at its southwest corner it reaches, to the extent of about one mile, the margin of Late St. George..
 

 In the first place, we are of opinion, that the fictitious plat and-certificate of Clarke can have no influence in fixing the identity of the land granted; nor, secondly, can any consideration be accorded to the line-marks made by McHardy in 1818 ; and, therefore, we are compelled to resort to the.face of the concession for a description that will identify the land granted. .And here, some legal principles interpose themselves for our government; the first of which is, that the. powers of the United States courts are conferred'by acts of Congress, and cannot extend beyond the powers conferred. Previous to the passing of the act of May 26, 1824, conferring the jurisdiction
 
 Jon
 
 the courts to adjudge incipient titles, such as the. present is, the1,political power could alone finally pass on them, and Congress uniformly did. so. By that act the courts were invested with’the jurisdiction that Congress had previously exercised ; but’ to an extent considerably' limited. The governing rules of adjudication, as • prescribed, aré found in the second section of that act; first, —
 
 “
 
 The courts shall.have full power and authority to hear and determine all questions in said cause relative to the title of the claimant.. Second, the extent,
 
 locality,
 
 and boundaries of the said claim,” &c. And by the sixth section, on a decree being had; and a copy thereof being served on the surveyor-general of the district, he shall survey the land decreed, for ■ which a patent shall be issued by the President to the claimant.' The “ locality, extent, and boundaries,” the court must find, before it can make an effective decree ; and if these cannot be found, no de'cree can be made: for any specific piece or parcel of land. The Superior Court had no power to grant land ; nor Had it any'- power to' decree an equivalent for land that could not He identified ; so this court has at. various times held ; as in the cases of Forbes (15 Peters, 184),'of Buyck
 
 (ibid.
 
 223), and in several other cases.
 

 The court, not b.eing enabled, in this instance, to derive any assistance from public acts; beyond the face of the grant, nor authorized to grant an- equivalent, has presented to it a territory some thirty miles long, on.the margin of the river St; John’s, at any one point in. .which distance the survey, might - be commenced with equal propriety that it might be at any other point; it follows, that the description, when applied to' the facts, is too vague .and indefinite for any survey to be made,-and that, therefore^ the claimants can take nothing under the concession ; and that i't is our duty to order ihé decree of 'the Superior Court of East Florida- to be reversed, and the petition to. be dismissed.
 

 .We.would remark, in.addition, that this concession in its leading features cannot be distinguished from' y.arioüs others that have heretofore .been brought before this court for. adjudication, where no specific land was granted, or intended tó be granted ; but it was left
 
 *29
 
 to the petitioner to have .a survey made of the land in the distript referred to by the concession, by the surveyor-general of the province, in dub form, on the ground, and to cause the plat and certificate of such survey to be recorded, by the surveyor-general, by which additional public act the .land granted was severed from the king’s domain, but remained part of it until the survey was made and recorded. Until this was done, the warrant was a floating, warrant of survey, not recognized by the government of Spain before the céssion, nor by this government since, as conferring an individual title to any specific parcel of land on the petitioner; so this court in effect held in the case of Wiggins (14 Peters, 351). From the time that such claims first came before this court, .they have not. been deemed as coming within the cognizance of the courts of Florida, because the 8th article of the treaty'of 1819 did not embrace them ; it only provided, “ That grants of land tríade" by his Catholic Majesty, or hy his lawful authorities, should be ratified and confirmed to the persons in possession of them, to the same extent that the same grants would be valid if the territories had remained under the dominion of his Catholic Majesty.” Actual manual possession has never been required to give title, but such identity must be established as to enable the courts tp ascertain with
 
 reasonable
 
 cer.tainty where the land lies ; as wás held in . Hanson’s casé (15 Peters) and others. And this may be shown either from the face of the grant, or by a legal survey made by the surveyor-general in conformity to the grant, during the time hé had power to make such .surveys.
 

 Order.
 

 This cause came on to be heard on the transcript of the record from the' Superior Court for the District of East Florida, and was argued by counsel. On consideration'whereof, it is the opinion of this court, that the claimants can take nothing under tfie concession in this case; whereupon, it is now here ordéred and decreed by this court, that the decree of the said Superior Court in this case be andthé same is hereby reversed and annulled ; and that this cause be and-thé same is hereby remanded to the said Superior Court, with directions to dismiss the petition of the claimants.