## COLEMAN *v.* TENNESSEE.

1. The thirtieth section of the act of March 3, 1863 (12 Stat. 731), entitled "An Act for enrolling and calling out the national forces, and for other purposes," did not make the jurisdiction of the military tribunals over the offences therein designated, when committed by persons in the military service of the United States, and subject to the articles of war, exclusive of that of such courts of the loyal States as were open and in the undisturbed exercise of their jurisdiction.

2. When the territory of the States, which were banded together in hostility to the national government, and making war against it, was in the military occupation of the United States, the tribunals mentioned in said section had, under the authority conferred thereby, and under the laws of war, exclusive jurisdiction to try and punish offences of every grade committed there by persons in the military service.

3. Officers and soldiers of the army of the United States were not subject to the laws of the enemy, nor amenable to his tribunals for offences com-

mitted by them during the war. They were answerable only to their own government, and only by its laws, as enforced by its armies, could they be punished.

4. Unless suspended or superseded by the commander of the forces of the United States which occupied Tennessee, the laws of that State, so far as they affected its inhabitants among themselves, remained in force during the war, and over them its tribunals, unless superseded by him, continued to exercise their ordinary jurisdiction.

5. A., charged with having committed murder. in Tennessee, whilst he was there in the military service of the United States during the rebellion, was, by a court-martial, then and there convicted, and sentenced to suffer death. The sentence, for some cause unknown, was not carried into effect. After the constitutional relations of that State to the Union were restored, he was, in one of her courts, indicted for the same murder. To the indictment he pleaded his conviction before the court-martial. The plea being overruled, he was tried, convicted, and sentenced to death. *Held*, 1. That the State court had no jurisdiction to try him for the offence, as he, at the time of committing it, was not amenable to the laws of Tennessee. 2. That his plea, although not proper, inasmuch as it admitted the jurisdiction of that court to try and punish him for the. offence, if it were not for such former conviction, would not prevent this court from giving effect to the objection taken in this irregular way to such jurisdiction. Accordingly, this court reverses the judgment, and directs the discharge of A. from custody under the indictment.

ERROR to the Supreme Court of the State of Tennessee. The facts are stated in the opinion of the court.

*Mr. Henry S. Foote* and *Mr. Leonidas C. Houk* for the plaintiff in error.

*Mr. J. B. Heiskell, contra.*

MR. JUSTICE FIELD delivered the opinion of the court.

This case comes before us from the Supreme Court of Tennessee. The plaintiff in error, the defendant in the court below, was indicted in the Criminal Court for the District of Knox County in that State, on the 2d of October, 1874, for the murder of one Mourning Ann Bell, alleged to have been committed in that county on the 7th of March, 1865. To this indictment he pleaded not guilty, and a former conviction for the same offence by a general court-martial regularly convened for his trial at Knoxville, Tenn., on the 27th of March, 1865, the United States at that time, and when the offence was committed, occupying with their armies East Tennessee as a military district, and the defendant being a regular soldier in their

military service, subject to the articles of war, military orders, and such military laws as were there in force by their authority. The plea states that before the said court-martial thus convened at Knoxville, then the head-quarters of the military district, the defendant was arraigned upon a charge of murder, in having killed the same person mentioned in the indictment, and that he was afterwards, on the 9th of May, 1865, tried and convicted of the offence by that tribunal, and sentenced to death by hanging, and that said sentence is still standing as the judgment of the court-martial, approved as required by law in such cases, without any other or further action thereon. In consideration of the premises, and by reason of the said trial and conviction, and of the jeopardy involved in said proceedings, the defendant prays that the indictment may be quashed.

Objection being taken by demurrer to this plea, it was twice amended by leave of the court. The first amendment consisted in setting forth with particularity the organization of the court-martial, and the proceedings before it upon which the defendant was convicted of the offence with which he is charged in the indictment. The second amendment consisted in adding an averment that the offence charged was committed, and that the court-martial which tried the defendant was held in time of civil war, insurrection, and rebellion.

To the plea thus amended a demurrer was sustained, on two grounds; one of which was, in substance, that the defendant's conviction of the offence charged by a court-martial, under the laws of the United States, on the 9th of May, 1865, was not a bar to the indictment for the same offence; because by the murder alleged he was also guilty of an offence against the laws of Tennessee.

The defendant was thereupon put upon his trial in the Criminal Court, convicted of murder, and sentenced to death. On appeal to the Supreme Court of the State the judgment was affirmed.

Pending the appeal to that court, the defendant was brought before the Circuit Court of the United States for the Eastern District of Tennessee on *habeas corpus*, upon a petition stating that he was unlawfully restrained of his liberty and imprisoned

by the sheriff of Knox County, upon the charge of murder, for which he had been indicted, tried, and convicted, as already mentioned; and setting forth his previous conviction for the same offence by a court-martial, organized under the laws of the United States, substantially as in the plea to the indictment. The sheriff made a return to the writ, that he held the defendant upon a *capias* from the criminal court for the offence of murder, and also upon an indictment for assisting a prisoner in making his escape from jail. The Circuit Court being of opinion that so far as the defendant was held under the charge of murder, he was held in contravention of the Constitution and laws of the United States, ordered his release from custody upon that charge. His counsel soon afterwards presented a copy of this order to the Supreme Court of Tennessee, and moved that he be discharged. That court took the motion under advisement, and disposed of it together with the appeal from the Criminal Court, holding, in a carefully prepared opinion, that the act of Congress of Feb. 5, 1867, under which the writ of *habeas corpus* was issued, did not confer upon the Federal Court, or upon any of its judges, authority to interfere with the State courts in the exercise of their jurisdiction over offences against the laws of the State, especially when, as in this case, the question raised by the pleadings was one which would enable the accused to have a revision of their action by the Supreme Court of the United States; and, therefore, that the order of the Circuit Court in directing the discharge of the defendant was a nullity. And upon the question of the effect of the conviction by the court-martial, it held that the conviction constituted no bar to the indictment in the State court for the same offence, on the ground that the crime of murder, committed by the defendant whilst a soldier in the military service, was not less an offence against the laws of the State, and punishable by its tribunals, because it was punishable by a court-martial under the laws of the United States.

The case being brought to this court, it has been argued as though its determination depended upon the construction given to the thirtieth section of the act of Congress of March 3, 1863, to enroll and call out the national forces, the defendant's coun-

sel contending that the section vested in general courts-martial and military commissions the right to punish for the offences designated therein, when committed in time of war, by persons in the military service of the United States, and subject to the articles of war, to the exclusion of jurisdiction over them by the State courts. That section enacts : —

" That in time of war, insurrection, or rebellion, murder, assault and battery with an intent to kill, manslaughter, mayhem, wounding by shooting or stabbing with an intent to commit murder, robbery, arson, burglary, rape, assault and battery with an intent to commit rape, and larceny, shall be punishable by the sentence of a general court-martial or military commission, when committed by persons who are in the military service of the United States, and subject to the articles of war; and the punishment for such offences shall never be less than those inflicted by the laws of the State, territory, or district in which they may have been committed." 12 Stat. 736.

The section is part of an act containing numerous provisions for the enrolment of the national forces, designating who shall constitute such forces; who shall be exempt from military service; when they shall be drafted for service; when substitutes may be allowed; how deserters and spies and persons resisting the draft shall be punished; and many other particulars, having for their object to secure a large force to carry on the then existing war, and to give efficiency to it when called into service. It was enacted not merely to insure order and discipline among the men composing those forces, but to protect citizens not in the military service from the violence of soldiers. It is a matter well known that the march even of an army not hostile is often accompanied with acts of violence and pillage by straggling parties of soldiers, which the most rigid discipline is hardly able to prevent. The offences mentioned are those of most common occurrence, and the swift and summary justice of a military court was deemed necessary to restrain their commission.

But the section does not make the jurisdiction of the military tribunals exclusive of that of the State courts. It does not declare that soldiers committing the offences named shall not be amenable to punishment by the State courts. It simply

declares that the offences shall be "punishable," not that they shall be punished by the military courts; and this is merely saying that they may be thus punished.

Previous to its enactment, the offences designated were punishable by the State courts, and persons in the military service who committed them were delivered over to those courts for trial; and it contains no words indicating an intention on the part of Congress to take from them the jurisdiction in this respect which they had always exercised. With the known hostility of the American people to any interference by the military with the regular administration of justice in the civil courts, no such intention should be ascribed to Congress in the absence of clear and direct language to that effect.

We do not mean to intimate that it was not within the competency of Congress to confer exclusive jurisdiction upon military courts over offences committed by persons in the military service of the United States. As Congress is expressly authorized by the Constitution "to raise and support armies," and "to make rules for the government and regulation of the land and naval forces," its control over the whole subject of the formation, organization, and government of the national armies, including therein the punishment of offences committed by persons in the military service, would seem to be plenary. All we now affirm is, that by the law to which we are referred, the thirtieth section of the Enrolment Act, no such exclusive jurisdiction is vested in the military tribunals mentioned. No public policy would have been subserved by investing them with such jurisdiction, and many reasons may be suggested against it. Persons in the military service could not have been taken from the army by process of the State courts without the consent of the military authorities; and therefore no impairment of its efficiency could arise from the retention of jurisdiction by the State courts to try the offences. The answer of the military authorities to any such process would have been, "We are empowered to try and punish the persons who have committed the offences alleged, and we will see that justice is done in the premises." Interference with the army would thus have been impossible; and offences committed by soldiers, discovered after the army

had marched to a distance, when the production of evidence before a court-martial would have been difficult, if not impossible, or discovered after the war was over and the army disbanded, would not go unpunished. Surely Congress could not have intended that in such cases the guilty should go free.

In denying to the military tribunals exclusive jurisdiction, under the section in question, over the offences mentioned, when committed by persons in the military service of the United States and subject to the articles of war, we have reference to them when they were held in States occupying, as members of the Union, their normal and constitutional relations to the Federal government, in which the supremacy of that government was recognized, and the civil courts were open and in the undisturbed exercise of their jurisdiction. When the armies of the United States were in the territory of insurgent States, banded together in hostility to the national government and making war against it, in other words, when the armies of the United States were in the enemy's country, the military tribunals mentioned had, under the laws of war, and the authority conferred by the section named, exclusive jurisdiction to try and punish offences of every grade committed by persons in the military service. Officers and soldiers of the armies of the Union were not subject during the war to the laws of the enemy, or amenable to his tribunals for offences committed by them. They were answerable only to their own government, and only by its laws, as enforced by its armies, could they be punished.

It is well settled that a foreign army permitted to march through a friendly country, or to be stationed in it, by permission of its government or sovereign, is exempt from the civil and criminal jurisdiction of the place. The sovereign is understood, said this court in the celebrated case of *The Exchange* (7 Cranch, 139), to cede a portion of his territorial jurisdiction when he allows the troops of a foreign prince to pass through his dominions: " In such case, without any express declaration waiving jurisdiction over the army to which this right of passage has been granted, the sovereign who should attempt to exercise it would certainly be con-

sidered as violating his faith. By exercising it, the purpose for which the free passage was granted would be defeated, and a portion of the military force of a foreign independent nation would be diverted from those national objects and duties to which it was applicable, and would be withdrawn from the control of the sovereign whose power and whose safety might greatly depend on retaining the exclusive command and disposition of this force. The grant of a free passage, therefore, implies a waiver of all jurisdiction over the troops during their passage, and permits the foreign general to use that discipline and to inflict those punishments which the government of his army may require." [1]

If an army marching through a friendly country would thus be exempt from its civil and criminal jurisdiction, *a fortiori* would an army invading an enemy's country be exempt. The fact that war is waged between two countries negatives the possibility of jurisdiction being exercised by the tribunals of the one country over persons engaged in the military service of the other for offences committed while in such service. Aside from this want of jurisdiction, there would be something incongruous and absurd in permitting an officer or soldier of an invading army to be tried by his enemy, whose country he had invaded.

The fact that when the offence was committed, for which the defendant was indicted, the State of Tennessee was in the military occupation of the United States, with a military gov-

---

[1] The same exemption from the civil and criminal jurisdiction of the place is extended to an armed vessel of war entering the ports of a friendly country by permission of its government, or seeking an asylum therein in distress. She is accorded the rights of exterritoriality, and is treated as if constituting a part of the territory of her sovereign. "She constitutes," said the court in the same case, "a part of the military force of her nation, acts under the immediate and direct command of the sovereign, is employed by him in national objects. He has many and powerful motives for preventing those objects from being defeated by the interference of a foreign State. Such interference cannot take place without affecting his power and his dignity. The implied license, therefore, under which such vessel enters a friendly port, may reasonably be construed, and it seems to the court ought to be construed, as containing an exemption from the jurisdiction of the sovereign within whose territory she claims the rights of hospitality." 7 Cranch, 144. See also Cushing on Belligerent Asylum, in Opinions of Att'ys-Gen., vol. vii. p. 122; Halleck, Int. Law c. 7, sect. 25.

ernor at its head, appointed by the President, cannot alter this conclusion. Tennessee was one of the insurgent States, forming the organization known as the Confederate States, against which the war was waged. Her territory was enemy's country, and its character in this respect was not changed until long afterwards.

The doctrine of international law on the effect of military occupation of enemy's territory upon its former laws is well established. Though the late war was not between independent nations, but between different portions of the same nation, yet having taken the proportions of a territorial war, the insurgents having become formidable enough to be recognized as belligerents, the same doctrine must be held to apply. The right to govern the territory of the enemy during its military occupation is one of the incidents of war, being a consequence of its acquisition; and the character and form of the government to be established depend entirely upon the laws of the conquering State or the orders of its military commander. By such occupation the political relations between the people of the hostile country and their former government or sovereign are for the time severed; but the municipal laws — that is, the laws which regulate private rights, enforce contracts, punish crime, and regulate the transfer of property — remain in full force, so far as they affect the inhabitants of the country among themselves, unless suspended or superseded by the conqueror. And the tribunals by which the laws are enforced continue as before, unless thus changed. In other words, the municipal laws of the State, and their administration, remain in full force so far as the inhabitants of the country are concerned, unless changed by the occupying belligerent. Halleck, Int. Law, c. 33.

This doctrine does not affect, in any respect, the exclusive character of the jurisdiction of the military tribunals over the officers and soldiers of the army of the United States in Tennessee during the war; for, as already said, they were not subject to the laws nor amenable to the tribunals of the hostile country. The laws of the State for the punishment of crime were continued in force only for the protection and benefit of its own people. As respects them, the same acts which constituted

offences before the military occupation constituted offences afterwards ; and the same tribunals, unless superseded by order of the military commanders, continued to exercise their ordinary jurisdiction.

If these views be correct, the plea of the defendant of a former conviction for the same offence by a court-martial under the laws of the United States was not a proper plea in the case. Such a plea admits the jurisdiction of the criminal court to try the offence, if it were not for the former conviction. Its inapplicability, however, will not prevent our giving effect to the objection which the defendant, in this irregular way, attempted to raise, that the State court had no jurisdiction to try and punish him for the offence alleged. The judgment and conviction in the criminal court should have been set aside, and the indictment quashed for want of jurisdiction. Their effect was to defeat an act done, under the authority of the United States, by a tribunal of officers appointed under the law enacted for the government and regulation of the army in time of war, and whilst that army was in a hostile and conquered State. The judgment of that tribunal at the time it was rendered, as well as the person of the defendant, were beyond the control of the State of Tennessee. The authority of the United States was then sovereign and their jurisdiction exclusive. Nothing which has since occurred has diminished that authority or impaired the efficacy of that judgment.

In thus holding, we do not call in question the correctness of the general doctrine asserted by the Supreme Court of Tennessee, that the same act may, in some instances, be an offence against two governments, and that the transgressor may be held liable to punishment by both when the punishment is of such a character that it can be twice inflicted, or by either of the two governments if the punishment, from its nature, can be only once suffered. It may well be that the satisfaction which the transgressor makes for the violated law of the United States is no atonement for the violated law of Tennessee. But here there is no case presented for the application of the doctrine. The laws of Tennessee with regard to offences and their punishment, which were allowed to remain in force during its

military occupation, did not apply to the defendant, as he was at the time a soldier in the army of the United States and subject to the articles of war. He was responsible for his conduct to the laws of his own government only as enforced by the commander of its army in that State, without whose consent he could not even go beyond its lines. Had he been caught by the forces of the enemy, after committing the offence, he might have been subjected to a summary trial and punishment by order of their commander; and there would have been no just ground of complaint, for the marauder and the assassin are not protected by any usages of civilized warfare. But the courts of the State, whose regular government was superseded, and whose laws were tolerated from motives of convenience, were without jurisdiction to deal with him.

This conclusion renders it unnecessary to consider the question presented as to the effect to be given to the order of the Circuit Court of the United States directing the discharge of the defendant. It is sufficient to observe that, by the act of Congress of Feb. 5, 1867, the several courts of the United States, and their judges, in their respective jurisdictions, have, in addition to the authority previously conferred, power to grant writs of *habeas corpus* in all cases upon petition of any person restrained of his liberty in violation of the Constitution or of any law of the United States; and if it appear, on the hearing had upon the return of the writ, that the petitioner is thus restrained, he must be forthwith discharged and set at liberty. *Ex parte Yerger*, 8 Wall. 101.

It follows, from the views expressed, that the judgment of the Supreme Court of Tennessee must be reversed, and the cause remanded with directions to discharge the defendant from custody by the sheriff of Knox County on the indictment and conviction for murder in the State court. But as the defendant was guilty of murder, as clearly appears not only by the evidence in the record in this case, but in the record of the proceedings of the court-martial, — a murder committed, too, under circumstances of great atrocity, — and as he was convicted of the crime by that court and sentenced to death, and it appears by his plea that said judgment was duly approved and still remains without any action having been taken upon

it, he may be delivered up to the military authorities of the United States, to be dealt with as required by law.

*So ordered.*

MR. JUSTICE CLIFFORD dissenting.

State Constitutions, as well as the Constitution of the United States, provide, in substance and effect, that no person shall be subject to be twice put in jeopardy of life for the same offence. Wherever that constitutional prohibition is found, whether in a State or the Federal Constitution, it is doubtless intended as a safeguard to the citizen against the repetition of a criminal prosecution in all cases where the accused has been once regularly tried for the same offence, and legally convicted or acquitted, which means that a party shall not be tried a second time for the same offence, after he has once been convicted or acquitted of the same by the verdict of a jury, and judgment has been rendered in the case against him or in his favor. But it does not mean that he shall not be tried for the offence a second time, if the jury in the first trial were discharged without giving any verdict, or if, having given a verdict, the judgment was arrested or a new trial was granted at the request of the accused; for in such a case the life of the accused cannot judicially be said to have been put in jeopardy. 2 Story, Const. (3d ed.), sect. 1787; *United States* v. *Haskell*, 4 Wash. 410; *Same* v. *Perez*, 9 Wheat. 579.

Borrowed, as that provision was, from the common law, it has everywhere been held to be subject to the same exceptions, limitations, and qualifications as were annexed to it by the expounders of the great repository of criminal jurisprudence. *Vaux's Case*, 1 Coke, 100.

Jeopardy, in the constitutional sense, arises when the accused is put to trial before a court of competent jurisdiction upon a sufficient indictment, and the prisoner has been legally convicted or acquitted by the verdict of a jury, as appears by the record thereof remaining in the court where the verdict was returned. 1 Bishop, Cr. Proced. (2d ed.), sect. 808.

Authorities may be referred to where it is held that the prisoner is put in legal jeopardy when the jury is duly impanelled and charged with his deliverance; but there are so many excep-

tions to that theory, that it cannot be regarded as a rule of decision, unless the trial is terminated short of a verdict and judgment, by the fault of the prosecutor.

Even when the trial terminates before judgment without the fault of the accused, or where the form of the trial, verdict, and judgment are in all respects correct, there are exceptions to the rule that the accused shall not be twice put in jeopardy of life, as well established and as universally acknowledged as the rule itself, of which the following are examples: —

Legal jeopardy does not arise if the court had not jurisdiction of the offence.  *Commonwealth* v. *Peters*, 12 Metc. (Mass.) 387; *Commonwealth* v. *Goddard*, 13 Mass. 455; *The People* v. *Tyler*, 7 Mich. 161.

Nor is such a party put in legal jeopardy if it appears that the first indictment was clearly insufficient and invalid.  *Commonwealth* v. *Bakeman*, 105 Mass. 53; *Gerard* v. *The People*, 3 Ill. 362; *The People* v. *Cook*, 10 Mich. 164; *Mount* v. *Commonwealth*, 2 Duv. (Ky.) 93.

Nor if by any overruling necessity the jury are discharged without a verdict.  *United States* v. *Perez*, 9 Wheat. 579; *The People* v. *Goodwin*, 18 Johns. (N. Y.) 187; *Commonwealth* v. *Bowden*, 9 Mass. 494; *Commonwealth* v. *Purchase*, 2 Pick. (Mass.) 521.

Nor is such a party put in legal jeopardy if the term of the court, as fixed by law, comes to an end before the trial is finished.  *The State* v. *Brooks*, 3 Humph. (Tenn.) 70; *State* v. *Mahala*, 10 Yerg. (Tenn.) 532; *State* v. *Battle*, 7 Ala. 259; *In the Matter of Robert Spier*, 1 Dev. (N. C.) L. 491; *Wright* v. *State*, 5 Ind. 290; Cooley, Const. Lim. (4th ed.) 404.

Nor if the jury are discharged before verdict, with the consent of the accused, expressed or implied.  *State* v. *Slack*, 6 Ala. 676.

Nor if the verdict is set aside on motion of the accused, or on writ of error sued out in his behalf.  *The State of Iowa* v. *Redman*, 17 Iowa, 329.

Nor in case the judgment is arrested on his motion.  *The People* v. *Casborus*, 13 Johns. (N. Y.) 351.

Sufficient appears to show that the prisoner, on the 2d of October, 1874, was in due form indicted of the crime of murder

in the proper criminal court of the county where the homicide was committed, the charge being that he, the prisoner, in that county, on the 7th of March, 1865, unlawfully, maliciously, wilfully, deliberately, premeditatedly, and of his malice aforethought, with a certain pistol which he then and there in his hand had and held, did shoot M. Ann Bell, then and there in the peace of God and the State being, from which shooting, in manner and form as alleged, the said M. Ann Bell then and there instantly died. Due process was issued and served; and the prisoner, upon his arraignment, pleaded that he was not guilty of the offence charged against him, and put himself upon the country.

Appended to that plea the prisoner also pleaded in bar of the indictment a former conviction for the same offence, in substance and effect as follows: That at the time he committed the alleged homicide he was an enlisted soldier in the Federal army, which was then and there in the occupation and control of the military district where the act of homicide was committed, and that he was then and there subject to the articles of war, and that by virtue thereof he was then and there, to wit, on the 24th of March, 1865, arraigned before a general court-martial upon charges and specifications setting forth the identical murder of the identical same person, which is the identical offence with which he is charged in the aforesaid indictment; that on the 9th of May following he was convicted of the crime of murder, and was sentenced by the court-martial to suffer the penalty of death by hanging; and he avers that the murder of which he was charged, and for which he was arraigned, tried, and convicted, is the same identical offence set forth in the pending indictment, and that the sentence is still standing as the judgment of said general court-martial, approved as required by law, without any other or further action thereon.

When the court met again, to wit, on the 6th of September in the same year, the district attorney of the county demurred to the plea in bar; and the court, after hearing the parties, sustained the demurrer, upon two grounds: first, because it did not convey a reasonable certainty of meaning; and, secondly, because it did not show a substantial cause of defence.

Leave being granted, the prisoner amended his special plea in bar of the indictment. By the amended plea he set forth the names of the officers comprising the general court-martial, the order under which it was convened, and the specification and charge under which he was arraigned, tried, and convicted. Averments are also set forth in the amended plea that the offence charged in the specification before the general court-martial is the same as that embodied in the indictment, and that the court-martial adjudged the prisoner guilty of the offence charged, and sentenced him to be punished as in such case made and provided; to which is added, that the proceedings were forwarded to the commander of the department, and that he, the said commander, approved and confirmed the sentence, and ordered that the same should be carried into execution.

Pursuant to the leave granted, the amendment to the plea was duly filed in the case; and the district attorney demurred to it, and assigned the following causes for the demurrer: 1. Because neither the plea nor the amendment alleges that the judgment of the court-martial is still in force and effect. 2. Because it is not alleged in either that the prisoner at the time of trial was subject to the articles of war. 3. Because neither the plea nor the amendment thereto alleges that it was during or in time of war, insurrection, or rebellion, when the offence was committed with which the prisoner is charged. 4. Because the conviction by the court-martial, even if regular in form, is no bar to the pending indictment for the alleged offence committed against the laws of the State.

Hearing was had, and the court where the indictment was found sustained the demurrer for the first and fourth causes shown by the pleader. Preliminary questions of the kind having been determined adversely to the prisoner, the jury was duly impanelled for his trial; and they returned a verdict that he was guilty of murder in the first degree as charged in the indictment, without mitigating circumstances. Murder in the first degree is a capital offence in that State, and the court, on the first day of October following, sentenced the prisoner to be punished as required by law.

Exceptions were filed by the prisoner, and he appealed from

the judgment of the subordinate court to the Supreme Court of the State. Pending the appeal, to wit, on the 17th of March, 1876, he filed a petition for a writ of *habeas corpus* in the Circuit Court of the United States, alleging that he was unlawfully restrained of his liberty by the sheriff of the county. Service was made; and the sheriff returned that he held the prisoner by virtue of a *capias* from the county criminal court for the offence of murder, and under an indictment for an escape from the county jail. Due return having been made, the court adjudged that the prisoner, so far as he was held under the charge of murder, should be released from custody and be permitted to go thence without hindrance or molestation; but he continued to remain in prison under the other charge.

Enough appears to show that the Supreme Court of the State, inasmuch as the order of discharge had respect to a prisoner in custody under State process, was of the opinion that it was a mere nullity, and that the same court proceeded to determine the legal questions involved in the appeal.

No question under the petition for *habeas corpus* is presented in the pleadings, nor was any such question ruled or decided by the court of original jurisdiction. Two questions presented by the special demurrer were decided by the judge at the trial adversely to the prisoner, both of which were properly before the Supreme Court on appeal, and were, in effect, decided in the same way: 1. That the plea in bar was defective because it did not allege that the judgment of the court-martial was still in force and operative. 2. Because the conviction by the court-martial, even if the plea is regular in form, is not a bar to the pending indictment.

Three points were decided by the State Supreme Court: 1. That the order of discharge made by the Circuit Court was a nullity. 2. That the plea in bar, even if sufficient in form, was no bar of the indictment found in the State court. 3. That the plea in bar was defective for the two reasons assigned by the subordinate court; and for these reasons the Supreme Court affirmed the judgment of the local court, and ordered that the sentence there pronounced be carried into execution.

Immediate application was made by the prisoner for a writ of error to remove the cause into this court, which was granted,

and an order entered there staying further proceedings in that court during the pendency of the writ of error.

Questions of difficulty arise in the case, of which the following are the most important: —

1. Conceding that the record of a former conviction is a good defence to a second indictment for the same offence, is that defence well-pleaded in the case before the court?

2. Suppose the sentence of a court-martial is such a judgment as will support such defence, when the second indictment is for the same offence and for a violation of the laws of the same sovereignty, will the record of a sentence by a court-martial of the United States support the plea of a former conviction, where the second indictment is found for an offence committed in violation of a State law?

3. Even if a Circuit Court may grant the writ of *habeas corpus* to a prisoner in custody under State process, is the order discharging the prisoner from such custody a bar to the further prosecution of the indictment under which he was held prior to such order of discharge?

Argument to show that the defence of a former conviction must be pleaded is quite unnecessary, as the rule at the present day is universally acknowledged; nor is it necessary to enter into much discussion to prove that it will not avail as a defence unless it is well pleaded, as that follows from the antecedent proposition, the rule being that the evidence is not admissible under the general issue.   *The People* v. *Benjamin*, 2 Park. (N. Y.) Cr. 201; 1 Bennett, Lead. Cr. Cas. (2d ed.) 541.

Second convictions, or even second trials, after legal conviction or acquittal, are not allowed in the administration of criminal justice; and the test by which to decide whether the accused has been once legally convicted or acquitted, says Spencer, C. J., is familiar to every lawyer, and he proceeds to say that it can only be by plea of *autrefois convict* or *autrefois acquit*, both of which are grounded upon the universal maxim of the common law, that no man is to be brought into jeopardy of his life more than once for the same offence, from which it follows as a consequence that if the accused has been once fairly convicted or found not guilty by the verdict of a jury, he may plead such conviction or acquittal in bar of any subse-

quent accusation for the same offence; but the defence must be pleaded, and it must be alleged and proved by the former record that the conviction or acquittal was legal, and that it was based on the verdict of a jury duly impanelled and sworn, else the plea will be subject to demurrer. *The People* v. *Goodwin*, 18 Johns. (N. Y.) 187; *The People* v. *McKay*, id. 212; *The People* v. *Olcott*, 2 Johns. (N. Y.) Cas. 301.

Jurisdiction is essential to the validity of every conviction or acquittal, as the rule is universal that a former conviction or acquittal in a court having no jurisdiction of the offence is a mere nullity, and constitutes no bar to a second prosecution. *Rex* v. *Bowman*, 6 Car. & P. 101; *State* v. *Elden*, 41 Me. 165; *Commonwealth* v. *Roby*, 12 Pick. (Mass.) 496.

Pleas of the kind must allege that the former trial was in a court having jurisdiction of the case, and that the person and the offence are the same, and must set forth the former record, else the plea will be bad. *King* v. *Wildey*, 1 Mau. & Sel. 188; 1 Burn, Justice (30th ed.), 352; 2 Russell (4th ed.), 60; *Rex* v. *Edwards*, Russ. & R. 224.

Standard authorities which show that the plea of a former conviction or acquittal must set forth the substance of the record are very numerous and decisive. Where the plea is *autrefois convict*, it must appear that the prisoner received sentence as required by law; or if the plea be *autrefois acquit*, it must appear that the court gave the order that he go without day. Roscoe, Cr. Evid. (8th ed.) 199.

Defences of the kind are often set up; and in order to avoid false pretences, the established rule is, that the accused is required not only to show the nature of the former prosecution and the conviction or acquittal with certainty in his plea, but also to show the record or its substance to the court, by producing or vouching it at the time he pleads, for otherwise it would be in his power to delay the trial when he pleased by pleading a former conviction or acquittal in another jurisdiction; and in order to prevent such false pretences in pleading, the requirement is, that the plea shall show the record, or vouch it if it be in the same court in the first instance, and that he is not allowed to wait until *nul tiel record* is pleaded by the prosecutor. 2 Stark. Cr. Pl. 350.

Support to that proposition is found in the form of such pleas as given in all the standard works of criminal law. Such a form of pleading is given by Bishop in his valuable work upon Criminal Procedure. His directions are that the pleader shall set forth the former conviction and judgment verbatim, and then proceed as follows: " As by the record thereof in the said court remaining more fully and at large appears, which said judgment and conviction still remain in full force and effect, and not in the least reversed or made void." 1 Bishop, Cr. Proced. (2d ed.), sect. 808.

Exactly the same form of such a plea is given by Train & Heard in their work entitled " Precedents of Indictments; " and their directions to the pleader are the same, that is, that the pleader shall set forth the former judgment and conviction verbatim, and then proceed to allege as directed in the other treatise, " as by the record thereof in the said court remaining more fully and at large appears, which said judgment and conviction still remain in full force and effect, and not in the least reversed or made void." Train & Heard, Prec. Indict. 486.

Forms for pleas in bar in such cases are also given by Mr. Archbold in his standard work upon Pleading in Criminal Cases. Like the forms previously noticed, he also directs that the substance of the proceedings in the former suit be fully set forth, and that the pleader proceed to add, " as by the record of the said conviction more fully and at large appears, which said judgment and conviction still remain in full force and effect, and not in the least reversed or made void." Archb. Plead. in Cr. Cas. (18th ed.) 141.

Averments of a like character are required by the form of such a plea given by Mr. Wharton in his work entitled " Precedents of Indictments." He gives the substance of the proceedings in the suit which led to the former conviction, and adds, " as by the record thereof more fully and at large appears, which said judgment still remains in full force and effect, and not in the least reversed or made void." 2 Whart. Prec. Indict. & Pleas (3d ed.), sect. 1154.

Courts and lawyers in Massachusetts, having occasion to study the forms of pleading in criminal cases, were for more

than a quarter of a century accustomed to consult the precedents, furnished by a learned and experienced prosecuting officer of that Commonwealth. Concise as the form is as given in that volume, it is nevertheless believed to contain all the necessary elements of a good plea. Suffice it to say that the author directs the pleader to recite the record of the former judgment and conviction verbatim, and then proceed as follows, to wit: as by the record thereof more fully and at large appears, which said judgment still remains in full force and effect. Davis, Precedents, 278.

Treatises of a standard character everywhere contain such a requirement, of which the very latest is that by Mr. F. F. Heard, whose extensive and accurate learning upon the subject of pleading in criminal cases entitles his opinion to great weight. His directions to the pleader are as follows : Set forth the former judgment and conviction verbatim, and proceed to aver, as by the record thereof in the said court more fully and. at large appears, which said judgment and conviction still remain in full force and effect, and not in the least reversed or made void. Mass. Cr. Law, 837.

Confirmed as that writer is by Starkie and Archbold, and by Lord Ellenborough in *King* v. *Wildey* (1 Mau. & Sel. 188), his view ought to be regarded as conclusive; and the same author states that the defence of a former conviction or a former acquittal must be pleaded, and that it is not admissible under the general issue, which is decisive of the whole case. p. 172.

Matters of a special character suggested in defence of a criminal prosecution which are not well pleaded, if duly demurred to, are to be treated as if they had no existence ; and if that be so, and it be well settled law that the defence of *autrefois convict* is not admissible in evidence under the general issue, then it follows that the whole foundation of the judgment of the court in this case is swept away. Since the time of Lord Coke, it has been settled law that such a plea is bad, unless it contains the averment that the prior judgment is in full force and unreversed, and the transcript shows that the prosecutor demurred to the plea on account of that defect, and that the State court sustained the demurrer and adjudged

the plea bad. Nor can any authority be found to support the proposition that such a defence is admissible under the general issue, and if not, then it follows to a demonstration that the judgment of the State court is correct.

Convictions and judgments may be reversed in criminal as well as in civil cases; and it is settled law that a second trial, where the former conviction or judgment is reversed, is not a violation of the constitutional provision which declares that no person shall be subject to be twice put in jeopardy for the same offence. *The People* v. *Rulloff*, 5 Park. (N. Y.) Cr. 82 ; 1 Colby, Cr. Law, 280 ; *Cobia* v. *The State*, 16 Ala. 781 ; 2 Story, Const. (3d ed.) 1787.

Exceptions of the kind and many others existing to the rule that a former conviction for the same offence is a bar to a pending indictment, show the necessity that the plea should set forth the substance of the proceedings in the former suit, and contain sufficient averments to show that the judgment is unreversed and in full force and effect. Where the judgment in the former suit was in another jurisdiction, the form given for the plea of *autrefois convict,* as given in all the standard writers on the subject, contains the formal averment that the judgment is unreversed and in full force.

Less strictness is required in pleading *autrefois acquit,* and in cases where the former trial and sentence were in the same court where the second indictment is pending. Text-writers in some cases seem to require the same averment as when the plea of a former conviction is based upon the record existing in another jurisdiction, but the better opinion is that the plea setting up a former conviction or acquittal in the same court is good if the pleader makes a *profert* of the record, as follows : as appears by the record of the proceedings now here remaining in court. *Rex* v. *Sheen,* 2 Car. & P. 634.

Even in these cases the pleader must make *profert* of the record of the former conviction, or the plea will be bad, as appears by each one of the following authorities: *Regina* v. *Bird,* T. & M. 445, note. In that case, the form of the plea is given in the note, and the words of the averment are, " as by the record of the said proceedings now here appears." *Same* v. *Same,* 5 Cox C. C. 14 ; *Same* v. *Same,* 2 Eng. L. & Eq. 448.

Substantial conformity with the requirement that the former record shall be set forth or *profert* made of it, will be sufficient to support the plea of *autrefois acquit*, if the offence charged in the pending indictment is the same as that embodied in the record of the former acquittal, as the only judgment in case of acquittal is that the prisoner be discharged and go without day. *The King* v. *Emden*, 9 East, 438.

Confirmation of that proposition is found in several cases; but it is equally well settled, that if the plea does not state the substance of the former proceedings, and does not make *profert* of the former record, the plea is bad, and will be held insufficient on demurrer. *The King* v. *Vandercomb*, 2 Leach, 714.

There can be no plea of *autrefois acquit*, says Jervis, C. J., where there is no judgment in the former trial on record. *Regina* v. *Reid, Ackroyd, & Rothwell*, 1 Eng. L. & Eq. 595.

Speaking of the plea of *autrefois convict*, Chitty says, it is of a mixed nature, and consists partly of matter of record and partly of matter of fact, and he adds, with emphasis, that it is settled to be absolutely requisite to set forth in the plea the record of the former acquittal; and, if so, it is equally requisite that it should be averred that the judgment is unreversed and in full force, as every lawyer of experience in criminal law knows, that, if the verdict was set aside or the judgment arrested at the request of the person convicted, the conviction becomes a nullity. 1 Chitty, Cr. L. 463; *Regina* v. *Drury*, 3 Car. & Kir. 193; *Waller* v. *The State*, 40 Ala. 325.

For these reasons, I am of opinion that the plea in bar to the indictment filed by the prisoner was bad, and that the decision of the State court sustaining the demurrer to it was correct. Having come to that conclusion, it is not necessary to examine the other objection to the plea in bar.

Suppose, for the sake of argument, that the plea in bar in this case is sufficient in form, still the question arises, whether the sentence of a court-martial of the United States is such a judgment as will sustain the plea of *autrefois convict* in a case where the pending indictment is found by the grand jury of a State for an offence defined by the laws of a State.

When the Federal Constitution was adopted, many of the rights of sovereignty previously possessed by the States were

ceded to the United States; and all agree that in the exercise of these powers the Federal government is supreme in its sphere of action, but the power to establish the ordinary regulations of police was still left with the individual States, and Mr. Cooley says that it cannot be taken from the States, nor can it be exercised under legislation by Congress. Neither can the national government, through any of its departments or officers, assume any supervision of the police regulations of the States. Cooley, Const. Lim. (4th ed.) 715; *United States* v. *Dewit*, 9 Wall. 44.

It has been frequently decided by this court, says Mr. Justice Grier, that the powers which relate merely to municipal regulations, or what may properly be called internal police, are not surrendered by the States or restrained by the Constitution of the United States, and that consequently, in relation to these, the authority of a State is complete, unqualified, and conclusive; and he decided that every law for the restraint and punishment of crime, for the preservation of the public peace, health, and morals, must come within that category. *License Cases*, 5 How. 504.

All that the Federal authority can do in such a case is to see that the States do not, under cover of this power, invade the sphere of Federal sovereignty, and obstruct or impede the exercise of any authority which the Constitution has confided to the United States, or deprive any citizen of rights guaranteed by the Constitution. State powers of the kind extend to every rightful · subject of legislation connected with their internal affairs, not prohibited by the Federal Constitution, which is necessary to protect the life and health of the citizen and to promote the peace, prosperity, and good order of society, and give efficacy to the maxim that each shall use what is his own, in such a manner as not to injure that of another. *Thorp* v. *The Rutland & Burlington Railroad Co.*, 27 Vt. 140; Potter's Dwarris, 454.

By the law of the State, murder is defined as follows: If any person of sound memory and discretion unlawfully kill any reasonable creature in being and under the peace of the State, with malice aforethought, either express or implied, such person shall be guilty of murder. 3 State Stat. 43.

Beyond question, the prisoner, on the 2d of October, 1874, was duly indicted of the crime of murder by the grand jury of the county, as appears by the indictment set forth in the record. Judicial authorities are not necessary to show that no Federal court created by Congress had jurisdiction of the offence, as the homicide was committed on land within the State, and not within any place over which the United States had exclusive jurisdiction. Exclusive jurisdiction of the offence, therefore, was vested in the State court, unless it can be held that the unexecuted sentence of the court-martial superseded the State law defining the crime of murder, and deprived the State court of the power to hear, try, and sentence the prisoner if found guilty, as that law required.

Congress has never defined such an offence, when committed within the acknowledged jurisdiction of the State, under the circumstances disclosed in the record, nor is there any pretence for the suggestion, that there is any conflict between the authorities of the State and the judicial authorities of the United States. Sentence without punishment is all that is pretended in this case; and the prisoner, through his counsel, admits that the failure of the United States to carry the sentence into effect must be taken as an abandonment by the United States to execute the plaintiff for the offence of which he was convicted by the court-martial.

Appeal from the sentence of the judge who presided at the trial to the State Supreme Court appears to have been taken chiefly, if not entirely, for the purpose of reviewing the ruling of the judge that the plea in bar filed by the prisoner was bad. Evidence to show that any other ruling of the judge was seriously controverted in the appellate tribunal is not found in the transcript, nor has any such attempt been made in argument here by the counsel of the prisoner. Instead of that, the main stress of the argument has been to show that the order of the Circuit Court discharging the prisoner under the petition for *habeas corpus* is final and conclusive, and to show that no person can lawfully be twice put in jeopardy of life, without much regard to the question whether the plea in bar is good or bad.

Unless the unexecuted sentence of the court-martial is such

a judgment as will support a plea of *autrefois convict*, it is clear that the ruling of the State judge at the trial was correct, even if it could be admitted that it is not required of such a plea that it should aver that the former judgment is in full force and effect. Due order was given by the commander of the department that the sentence should be carried into execution ; but it was not, and the record fails to show for what reason the order was disobeyed or neglected. It may have been countermanded, or the prisoner may have deserted, or the occurrence. may possibly be accounted for in some other way. However that may be, it is clear that the sentence was never executed, and it is perhaps equally clear that it has become a nullity by the intervention of peace.

No sentence of a court-martial inflicting the punishment of death shall be carried into execution until it shall have been confirmed by the President, except in the enumerated cases of persons, including murderers, convicted in time of war; but the same article provides that in such excepted cases the sentence of death may be carried into execution, upon confirmation by the commanding general in the field, or the commander of the department, as the case may be. Rev. Stat., art. 105, p. 240.

Approved and confirmed, as the sentence was, by the commander of the department, and not by the President, it may well be contended that it became abandoned when peace came. Peace came in the State where these proceedings took place on the 2d of April, 1866, as expressly decided by this court ( *The Protector*, 12 Wall. 700) ; and the plea in bar in this case was not filed until May 31, 1875, nine years after the war of the rebellion terminated in that State.

Unapproved as the sentence of the court-martial was by the President, it is clear that it had become inoperative before the plea in bar was filed, and consequently was not at that time such a judgment as would support the plea of *autrefois convict*, — the rule being, by all the well-considered authorities, that the judgment, in order that it may be sufficient to support such a plea, must be in full force and effect, and not in the least reversed or made void. *The King* v. *Wildey*, 1 Man. & Sel. 183 ; Bishop, Cr. Proced. (2d ed.), sect. 808.

Opposed to this is the suggestion that the prisoner served in

the army subsequent to the sentence of the court-martial; but, if so, the inference is irresistible that he got back by deception or misrepresentation; nor is it believed to be true that he now holds an honorable discharge from the public military service.

Even if a circuit court may grant the writ of *habeas corpus* to a prisoner convicted of murder in a State tribunal, and in custody on appeal under process from the highest court of a. State, it by no means follows that the order of such a judge discharging such a prisoner from custody under a State law is a bar to the further prosecution of the indictment under which he was held prior to such order of discharge.

Prior to the passage of the act of the 5th of February, 1867, the universal rule, as enacted by Congress, was, "that writs of *habeas corpus* shall in no case extend to prisoners in jail, unless where they are in custody under and by color of the authority of the United States, or are committed for trial before some court of the same, or are necessary to be brought into court to testify." 1 Stat. 82; 14 id. 385.

Apply that rule to the case, and it is clear to a demonstration that the Circuit Court had no jurisdiction to grant the writ of *habeas corpus*, under which the prisoner was discharged. Both parties concede that proposition; but the prisoner, through his counsel, insists that the jurisdiction to issue the writ and order the discharge was plainly conferred by the subsequent act of Congress.

Justices and judges of the courts of the United States have power, in addition to the authority previously conferred, to grant writs of *habeas corpus* in all cases where any person may be restrained of his or her liberty in violation of the Constitution or of any treaty or law of the United States. 15 id. 385. Evidently the last act does not repeal the former, its only effect being to confer additional authority upon the subject.

Writs of *habeas corpus* may be granted to deliver the applicant from imprisonment, even when confined under State process, if he is so confined in violation of the Constitution or a law of Congress, and not otherwise. Except when the prisoner is restrained of his liberty in violation of the Constitution or law of Congress, the jurisdiction of the Federal courts in

such cases remains as it stood before, and does not extend to prisoners in custody under State process.

Grant that, and it follows that the order of the Circuit Court discharging the prisoner from custody under the State process was a nullity, at least for two reasons: 1. Because the plea of *autrefois convict* was bad; and if bad, then it did not appear in contemplation of law that he was a second time put in jeopardy by the pending indictment. 2. Because it clearly appears that the sentence of the court-martial was not such a judgment as will support the plea of *autrefois convict;* and if not, then it did not appear that the prisoner was restrained of his liberty in violation of the Constitution or a law of Congress.

Jurisdiction to try and punish offenders against the authority of the United States is conferred upon the Circuit and District Courts, but those courts have no jurisdiction of offences committed against the authority of a State.

Criminal homicide, committed in a State, is an offence against the authority of the State, unless it was committed in a place within the exclusive jurisdiction of the United States. Offences of the kind, if committed by a person in the military service of the United States, are breaches of military discipline, and the offender may be tried and sentenced by a court-martial; but the sentence, if it awards the punishment of death, cannot be carried into execution until it is approved and confirmed by the President, except in cases of persons convicted in time of war, as before explained. Cases arise, undoubtedly, where a conqueror, having displaced the courts of the conquered country, may establish special tribunals in their place; but it is quite sufficient to say, in response to that suggestion, if made, that no such question is involved in the case before the court, as fully appears from the plea in bar filed by the prisoner, — the only question being whether the sentence of the court-martial is such a judgment as, if well pleaded, will support the plea of *autrefois convict* in bar of an indictment for murder committed in violation of a State law.

Military conquerors, in time of war, may doubtless displace the courts of the conquered country, and may establish civil tribunals in their place for administering justice; and where

that is done, it is unquestionably true that the jurisdiction of the tribunals established by the conqueror is rightful and conclusive.  *United States* v. *Rice,* 4 Wheat. 246 ;  *Cross* v. *Harrison,* 16 How. 164.

But that concession only shows that the military occupant holding the possession of a State has the belligerent power to reorganize the local government as the means of enforcing the sovereignty of the conqueror; but the mere occupancy of the territory by his forces does not necessarily displace the local tribunals of justice, as the conqueror, if he sees fit, may suffer them to remain.

Courts of justice for the trial of criminal offences were not established by the military conqueror of the State, nor was the prisoner tried before any such tribunal.  Nothing of the kind is set up in the pleas in bar, nor is any thing of the kind pretended in argument.  Instead of that, the record shows that the tribunal was a general court-martial, convened under the rules and regulations for the government of the army, which were as applicable at the time in the loyal as in the rebellious States.

Contradicted as such a theory is by every line of the record, it is clear that it has no proper foundation, either in truth, law, or justice.

Without more, the two objections to the plea of *autrefois convict* — to wit, that it is bad in form, and that the sentence of the court-martial, at the time it was pleaded, was not such a judgment as would support such a plea — are amply sufficient to show that the judgment of the State court should be affirmed ; but I am also of the opinion that the order of the Circuit Court discharging the prisoner from imprisonment is a nullity.

Discussion to show that wilful murder is an offence against the authority of the State is unnecessary, as that proposition is fully established by the law of the State.  3 State Stat. 43. Grant that, and still it is suggested that it is also a military offence, which may be tried and punished by court-martial, which is admitted without hesitation ; but it is not admitted that an unexecuted sentence of such a court-martial is a bar to a subsequent prosecution by the State for the murder of one of her citizens.  *The State* v. *Rankin,* 4 Cold. (Tenn.) 145.

An offence, says Mr. Justice Grier, speaking for the whole court, means, in its legal signification, the transgression of a law ; and he adds, that a man may be compelled to make reparation in damages to the injured party, and may be liable also to punishment for a breach of the public peace in consequence of the same act, and in that way may be said, in common parlance, to be twice punished for the same offence.

Every citizen of the United States is also a citizen of a State or Territory. He may, says the same learned judge, be said to owe allegiance to two sovereigns, and may be liable to punishment for an infraction of the laws of either, and the same act may be an offence or transgression of the laws of both. Thus, an assault on the marshal, and hindering him in the execution of legal process, is a high offence against the United States, for which the perpetrator is liable to punishment ; and the same act may also be a gross breach of the peace of the State, if it results in a riot, assault, or a murder, and may subject the same person to a punishment under the State laws for a misdemeanor or felony. That either or both governments may punish such offender cannot be doubted, yet it cannot be truly averred that the offender has been twice punished for the same offence, but only that by one act he has committed two offences, for each of which he is punishable ; nor could he plead one punishment in bar to an indictment by the other, for the reason that the act committed was an offence against the authority of each. *Moore* v. *Illinois*, 14 How. 13. Two more cases decided by this court are to the same effect, and are supported by substantially the same course of reasoning. *Fox* v. *State of Ohio*, 5 How. 410 ; *United States* v. *Marigold*, 9 id. 560.

In the first case, the indictment was for " passing and uttering a certain piece of false, base, and counterfeit coin, forged and counterfeited to the likeness and similitude of the good and legal silver coin " called a dollar, passing currently in the State. By the report of the case it appears that the defendant, having been convicted, removed the cause here, and assigned for error that the State court had no jurisdiction of the offence as defined in the State law. But this court held that the State law was valid, that offenders committing offences

falling within the competency of different authorities to re-
strain and punish them, may properly be subjected to the
consequences which those authorities ordain and affix to their
perpetration.

When examined with care, it will also be found that the
second case decides the same point, — that the same act may
constitute an offence against both the State and the Federal
governments, and may draw to its commission the penalties
denounced by either as appropriate to its character in refer-
ence to each.

Decided support to that conclusion is also derived from
certain eminent text-writers, as, for example, Mr. Cooley says,
" The States may constitutionally provide for punishing the
counterfeiting of coin and the passing of counterfeit money,
since these acts are offences against the State, notwithstanding
they may also be offences against the nation." Cooley, Const.
Lim. (4th ed.) 25.

Corresponding views are expressed by Mr. Wharton, as
follows : Nor should it be forgotten that an offence may have
in such cases two aspects, so that one sovereign may punish it
in the first aspect, and the other in the second, which is a
striking illustration of the case before the court. Reference
is made by the author to some of the difficulties which arise in
such a case ; and he suggests as the means of their solution that
" supplementary jurisdiction is in such cases to be maintained,
but that cumulative punishment is to be avoided by the inter-
position of executive clemency." Wharton, Cr. Law (7th ed.),
435 ; Whiting, War Powers (43d ed.), 188.

Eminent judicial support to that view is also found in the
Circuit Court, as exhibited in the opinion of Mr. Chief Justice
Taney. *United States* v. *Amy*. Though unreported in the
volume of his decisions, it will be found published in a note
to the case of *Negro Ann Hammon* v. *The State*, 14 Md. 135.
Congress enacted that, if any person shall steal a letter from
the mail, the offender shall, upon conviction, be imprisoned not
less than two nor more than ten years. 4 Stat. 109. Ques-
tions of various kinds were contested, and in speaking of the
liability of a party to be convicted under a State law for the
offence therein, the Chief Justice remarked, that in maintaining

the power of the United States to pass this law it is proper to say that as these letters, with the money within them, were stolen in the State, the party might undoubtedly have been punished in the State tribunals according to the law of the. State, without any reference to the post-office or the act of Congress, because from the nature of our government the same act may be an offence against the laws of the United States and also of a State, and be punishable in both; and having cited *Fox* v. *State of Ohio* (5 How. 10) and *United States* v. *Marigold* (9 id. 560), he added, "and the punishment in one sovereignty is no bar to his punishment in the other."

These considerations, it would seem, are sufficient to show that there is no error in the record; but still it is deemed proper to add, that I am of the opinion that the Circuit Court had no jurisdiction to grant the writ of *habeas corpus*, and that the order discharging the prisoner is without legal effect. Nothing can be more certain in legal decision than the proposition that no power to grant such a writ in such a case is conferred by the fourteenth section of the Judiciary Act; and it is equally clear that the power to grant the writ in such a case, and to deliver the applicant, is not found in the act of the 5th of February, 1867, unless the petitioner is restrained of his or her liberty in violation of the Constitution or of some treaty or law of the United States. *Barron* v. *Mayor, &c. of Baltimore,* 7 Pet. 243.

Extensive as the differences of opinion are in this case, all will agree, I suppose, that the decision of the judge that he had jurisdiction to grant the writ of *habeas corpus* in such a case is not conclusive; and if not, then I submit to every person interested in the question, that it is clearly shown that the jurisdiction has not been conferred by an act of Congress. *Ex parte Milburn,* 9 Pet. 704; *Ridgway's Case,* 2 Ashm. (Pa.) 247.

Persuasive and convincing confirmation of the dual character of the jurisdiction in such cases is also derived from the fact that the military authorities of the United States hold that the 'conviction and sentence of such an offender by the proper judicial tribunal of the State is no bar to the subsequent proceedings of a court-martial in a case where the criminal act for

which the accused was indicted is also a breach of the rules and articles of war. 3 Op. Att'y-Gen. 749.

Officers and soldiers of the army who do acts criminal both by the military and the municipal law, are, under certain conditions and limitations, subject to be tried by the civil authorities in preference to the military; but the conviction or acquittal of the party by the civil authorities will not discharge the officer or soldier from responsibility for the military offence involved in the same facts. *Steiner's Case*, 6 id. 413.

Martial or military law, says Tytler, does not in any respect either supersede or interfere with the civil and municipal laws of the realm. Hence it appears that soldiers are, equally with all other classes of citizens, bound to the same strict observance of the laws of the country and the fulfilment of all their social duties, and are alike amenable to the ordinary civil and criminal courts of the country for all offences against those laws and breach of those duties. P. 153.

A former acquittal or conviction of an act by a civil court, says Benêt, is not a good plea in bar before a court-martial on charges and specifications covering the same. Benêt, Courts-Martial, 115.

"Assault and battery and homicide," says Mr. Cushing, "are violations of the municipal laws of the place where committed, to be tried and punished by the proper tribunal of the State or Territory whose peace and laws are broken and offended." But the military authorities maintain that the same acts being done by an officer or soldier of the army, over and above the breach of the local law, is also a violation of the rules and articles for the government of the army, and that in such a case the offender is punishable both as a citizen subject to the municipal law of the place, and as an officer or soldier subject to the rules and regulations enacted by Congress for the government of the army. *Howe's Case*, 6 Op. Att'y-Gen. 511; Benêt, Courts-Martial, 117; *State* v. *Yancey*, 1 Law Repos. (N. C.) 133; *State* v. *Woodfin*, 5 Ired. (N. C.) L. 199.

Viewed in the light of these suggestions, I am of the opinion that there is no error in the record, and that the judgment of the Supreme Court of the State should be affirmed.