UNITED STATES v. OLSEN.

(District Court, N. D. California. September 4, 1893.)

No. 2,902.

**1. CRIMINAL LAW— PLEAS — FORMER JEOPARDY — AUTREFOIS CONVICT—SUFFICIENCY.**

A plea of autrefois convict is insufficient which fails to aver that the judgment pleaded in bar is unreversed and continues in full force and effect.

**2. SAME—EFFECT OF PENDING APPEAL.**
 The fact that there is an appeal pending does not deprive defendant of the protection of the judgment pleaded in bar, where such judgment is otherwise sufficient.

**3. SAME—FORFEITURE OF VESSEL NOT A BAR TO INDICTMENT.**
 A judgment of forfeiture entered against a vessel under Act July 5, 1884, § 10, (23 Stat. 117,) for an act of the master in bringing Chinese la-. borers from a foreign port and landing them in the United States, in violation of section 2 of the act, cannot be pleaded by the owner of the vessel in bar to an indictment for aiding and abetting the act of the master, as forbidden in section 11 of the act. U. S. v. McKee, 4 Dill. 128; Coffey v. U. S., 6 Sup. Ct. Rep. 437, 116 U. S. 436; and U. S. v. One Distillery, 43 Fed. Rep. 846, distinguished.

Indictment of William Olsen for violation of Act July 5, 1884, § 11. Plaintiff demurs to defendant's plea in bar. Demurrer sustained.

Charles A. Garter, U. S. Atty.
Daniel T. Sullivan, for defendant.

MORROW, District Judge. The indictment, filed January 17, 1893, charges defendant with the crime of bringing within the United States, and aiding and abetting the landing of, 35 Chinese laborers, contrary to law. To this indictment the defendant has interposed a plea in bar, alleging that all the acts and wrongs charged against the defendant in the indictment herein constitute part of the acts, wrongs, and violations of law set forth in a certain libel of information filed in this court January 6, 1893, and entitled "The United States vs. The Steam Schooner Louis Olsen," etc., upon which libel a decree of forfeiture was made and entered May 8, 1893, ordering, adjudging, and decreeing that the said schooner Louis Olsen, her engines, tackle, apparel, and furniture, be forfeited to the use of the United States. The district attorney has demurred to this plea on the ground that it is not sufficient in law to bar the United States from prosecuting the defendant upon the indictment. The second count of the libel is based upon section 10 of the act of May 6, 1882, as amended by the act of July 5, 1884, and charges, in substance, that F. C. Deering, the master of the said vessel, did on or about the 3d day of November, 1892, knowingly, wrongfully, and unlawfully bring into the United States, by said steam schooner Louis Olsen, from a foreign port or place, and land, and permitted to be landed, 35 Chinese laborers, who were not entitled to come into or be in the United States. It is further alleged that the master, F. C. Deering, knowingly, wrongfully, and unlawfully aided and abetted the landing of the said Chinese laborers by furnishing them transportation upon the said steam schooner Louis Olsen from the foreign port to the United States. The case was heard May 8, 1893, and a decree of forfeiture was entered in favor of the United States for the reasons and causes set forth in said libel of information.

William Olsen, the defendant in the present case, was the claimant and owner of the steam schooner Louis Olsen. In the indictment now before the court the defendant is charged with the of-

fense of bringing into the United States 35 Chinese laborers. He is also charged, in the same count, with the crime of aiding and abetting the landing of the said Chinese laborers from the steam, schooner Louis Olsen, which had arrived from a foreign port or place, and it is set forth that he so aided and abetted such land-ing by furnishing transportation to the said Chinese laborers from a foreign port to the United States, providing them with food and other accommodations during the voyage, and by employing the officers and crew to manage the vessel, and by supplying them with boats, crews, and other means and appliances to enable them to land in the United States. It is claimed on the part of the defendant that the transaction alleged in the libel of information against the steam schooner Louis Olsen and the transaction charged against the defendant in this indictment are but one and the same, and that the judgment of forfeiture in the proceedings in rem against the vessel is a bar to the prosecution of the defend-ant under the indictment. The district attorney contends that the plea in bar is not sufficient, in this: that it is not alleged that the judgment in bar has become final, since, for aught that appears in the plea, the condemnation proceedings may be now pending on appeal. The allegations of the plea are that the district court of the United States "determined the issue joined between the United States and said claimant in favor of the United States, and ordered, adjudged, and decreed that the said schooner Louis Olsen, her en-gines, tackle, apparel, and furniture, be, and they were accordingly, condemned as forfeited to the use of the United States, for the rea-sons and causes set forth in said libel."

In Coleman v. Tennessee, 97 U. S. 509, a soldier in the military service of the United States, during the war of the Rebellion, com-mitted the crime of murder in the state of Tennessee. He was tried by a military court-martial, convicted, and sentenced to suffer death, but for some cause unknown the sentence was not carried into effect. After the constitutional relations of the state of Tennessee to the Union were restored, he was, in one of her courts, indicted for the same murder. To the indictment he pleaded his conviction before the court-martial. The plea being overruled, he was tried, convicted, and sentenced to death. The question in the supreme court of the United States was the jurisdiction of the state court over the person of the defendant, and it was held that the state court had no jurisdiction to try him for the offense, as he, at the time of committing it, was not amenable to the laws of Tennessee; and that his plea, although not proper, inasmuch as it admitted the jurisdiction of that court to try and punish him for the offense, if it were not for such former con-viction, would not prevent the supreme court from giving effect to the objection taken in this irregular way to such jurisdiction. In a dissenting opinion, Mr. Justice Clifford upholds the jurisdic-tion of the state court, and, among other things, discussed the sufficiency of the plea in bar. The learned judge says:

"Since the time of Lord Coke it has been settled law that such a plea is bad, unless it contains the averment that the prior judgment is in full force

and unreversed. * * * Speaking of the plea of autrefois convict, Chitty says: 'It is of a mixed nature, and consists partly of matter of record and partly of matter of fact;' and he adds, with emphasis, 'that it is settled to be absolutely requisite to set forth in the plea the record of the former acquittal; and, if so, it is equally requisite that it should be averred that the judgment is unreversed and in full force, as every lawyer of experience in criminal law knows that, if the verdict was set aside, or the judgment arrested, at the request of the person convicted, the conviction becomes a nullity.' "

As there is nothing here stated in the dissenting opinion in conflict with the prevailing opinion of the court; it may be accepted as authority as to the necessity of an averment in the plea that the judgment in bar is unreversed, and continues in full force and effect. I am therefore of the opinion that the plea in bar is defective in that particular, but I am not prepared to say that the plea must also show that no appeal or writ of error has been taken from the judgment pleaded in bar. It is true that a single line in Wharton's Criminal Pleading and Practice (section 435) seems to express that view, but the authorities cited do not support the text. The true rule appears to be that, where the judgment has been entered by a court of competent jurisdiction, upon a valid indictment, sufficient in form and substance to sustain a conviction, it will protect the defendant from a second prosecution for the same offense while it stands. Bishop, in his work on Criminal Law, (section 1021,) states the rule in this way:

"Sec. 1021. When the grand jury is organized so imperfectly as not to be a lawful body, there is no valid indictment; therefore no jeopardy. Again: An indictment so ill in its averments that any judgment thereon will be reversible for error is too defective a preliminary thing of record for a jeopardy upon it to be possible. Therefore, though there has been a form of trial on it, the defendant may be indicted anew. Still, after a verdict of guilty on such indictment, and judgment rendered thereon, there can be no second prosecution while the judgment is unreversed; not because there has been a jeopardy, for there has not, but because the judgment is voidable only, and of the same effect while it stands as a valid one."

Applying this rule to the libel of information and judgment of forfeiture in this case, it is apparent that, even though there is an appeal pending in the case, the defendant is not, for that reason, deprived of the protection of the judgment, if it is otherwise sufficient.

This brings us to the consideration of the most important question involved in the plea. It is contended on the part of the defendant that, his vessel having been forfeited under the provisions of section 10 of the act of May 6, 1882, for a violation, on the part of the master, of section 2 of the same act, as amended by the act of July 5, 1884, such judgment of forfeiture is a bar to the prosecution of the defendant criminally for a violation of section 11 of the act of July 5, 1884, and in support of this position he cites, among other cases, the following: Ex parte Lange, 18 Wall. 163; U. S. v. McKee, 4 Dill. 128; Coffey v. U. S., 116 U. S. 436, 6 Sup. Ct. Rep. 437; and U. S. v. One Distillery, 43 Fed. Rep. 846. There is nothing in Ex parte Lange applicable to the present case. In the Case of McKee the defendant was being prosecuted in a civil action,

under section 3296, Rev. St., to recover the penalty of double the tax on certain distilled spirits, removed to a place other than the distillery warehouse provided by law, and it was charged that the defendant aided and abetted the removal of such distilled spirits. To this action the defendant pleaded that he had been indicted, convicted, and punished for this same offense, under a charge for conspiring with certain distillers to defraud the United States by unlawfully removing distilled spirits without payment of the taxes thereon, contrary to the provisions of section 5440 of the Revised Statutes; that the judgment of the court was that he pay a fine of $10,000, and be imprisoned in the county jail for two years; and he further pleaded a full and unconditional pardon by the president, and he exhibited a copy of the pardon with his plea. The court held that the specific acts of removal of distilled spirits, on which the civil suit was brought, were the same acts which were proved in support of the indictment in the criminal case, and that the pardon was also a bar to the civil suit, and, moreover, the court was strongly of the opinion that the pardon would be a good bar to an action for acts not included in that prosecution, but of the same character. The plea was accordingly sustained. Here the same party was being prosecuted in the two actions for the same specific acts, and the issues were therefore identical. This is not the case at bar, as we will find presently, when we come to examine the issues presented by the pleadings.

In Coffey v. U. S. the action was to forfeit certain property under the provisions of sections 3257, 3450, and 3453 of the Revised Statutes. The claimant of the property, in his answer, among other things, set up a prior judgment of acquittal on a criminal information against him by the United States in the same court, founded on the same sections of the Revised Statutes, and he alleged that such criminal information contained allegations of all the violations of law charged in the libel against his property. There was a demurrer to this part of the answer. The supreme court, in discussing the question thus presented, said:

"Where an issue raised as to the existence of the act or fact denounced has been tried in a criminal proceeding instituted by the United States, and a judgment of acquittal has been rendered in favor of a particular person, that judgment is conclusive in favor of such person on the subsequent trial of a suit in rem by the United States, where, as against him, the existence of the same act or fact is the matter in issue, as a cause for the forfeiture of the property prosecuted in such suit in rem. It is urged as a reason for not allowing such effect to the judgment that the acquittal in the criminal case may have taken place because of the rule requiring guilt to be proved beyond a reasonable doubt, and that, on the same evidence, on the question of preponderance of proof, there might be a verdict for the United States in the suit in rem. Nevertheless, the fact or act has been put in issue and determined against the United States; and all that is imposed by the statute, as a consequence of guilt, is a punishment therefor. There could be no new trial of the criminal prosecution after the acquittal in it; and a subsequent trial of the civil suit amounts to substantially the same thing, with a difference only in the consequences following a judgment adverse to the claimant."

The defendant in the present case certainly does not come within any rule here established,—First, because the prior proceedings

were not against him individually, but for the forfeiture of an offend-ing thing; second, it was not the act of the defendant that was in issue as the cause of the forfeiture; and, third, the judgment was of conviction, and not of acquittal. That these distinctions were recognized as important by the supreme court in the case cited is evident, not only from the language just quoted, but also from what the court further said on the subject. The court said:

"When an acquittal in a criminal prosecution in behalf of the government is pleaded, or offered in evidence, by the same defendant, in an action against him by an individual, the rule does not apply, for the reason that the parties are not the same; and often for the additional reason that a certain intent must be proved to support the indictment, which need not be proved to support the civil action. But upon this record, as we have already seen, the parties and the matter in issue are the same."

The court says further:

"Whether a conviction on an indictment under 3257 could be availed of as conclusive evidence in law for a condemnation in a subsequent suit in rem under that section, and whether a judgment of forfeiture in a suit in rem under it would be conclusive evidence in law for a conviction on a subse-quent indictment under it, are questions not now presented."

Referring now to section 10 of the act of July 5, 1884, under which the judgment of forfeiture was entered against the steam schooner Louis Olsen, we find it provides as follows:

"That every vessel whose master shall knowingly violate any of the pro-visions of this act shall be deemed forfeited to the United States, and shall be liable to seizure and condemnation in any district of the United States into which such vessel may enter or in which she may be found."

The provision of the act which, it was alleged, the master violated, was section 2, which provides as follows:

"That the master of any vessel who shall knowingly bring within the United States on such vessel, and land, or attempt to land, or permit to be landed, any Chinese laborer, from any foreign port or place, shall be deemed guilty of a misdemeanor, and, on conviction thereof, shall be punished by a fine of not more than five hundred dollars for each and every such Chinese laborer so brought, and may also be imprisoned for a term not exceeding one year."

The act that was in issue in the forfeiture proceedings was the act of the master, and the alleged guilty thing was the vessel. The defendant was not the master, but claimed to be the owner, and he lost his property because it was, in the judgment of the court, an offender against the law. In the case of The Palmyra, 12 Wheat. 14, the supreme court said:

"The thing is here primarily considered as the offender, or rather the offense is attached primarily to the thing; and this whether the offense be malum prohibitum or malum in se. * * * Many cases exist where the forfeiture for acts done attaches solely in rem, and there is no accompany-ing penalty in personam. Many cases exist where there is both a forfeiture in rem and a personal penalty. But in neither class of cases has it ever been decided that the prosecutions were dependent upon each other; but the practice has been, and so this court understands the law to be, that the proceeding in rem stands independent of, and wholly unaffected by, any criminal proceeding in personam."

This distinction has been observed in many acts of congress fixing fines, penalties, and forfeitures for the violations of law, and particularly in those relating to the customs revenue, and vessels

engaged in foreign and domestic commerce; and until recently no question has been raised as to the right of the government to proceed in one action for the forfeiture of the offending thing, and in another for the punishment of the offender. In Wapples on Proceedings in Rem (page 22, § 21) the author, in speaking of an action in rem, says:

"The case proceeds without reference to any criminal proceedings that may be at the same time progressing before the same or another tribunal against the culprit; without reference to the entire absence of ownership, should the property have been abandoned; without reference to the fact that the offender may have been already punished for the very act that caused the forfeiture of the property proceeded against. The smuggler, convicted and punished for his crime, cannot plead his conviction in bar of the civil action in rem to declare the forfeiture of the goods smuggled. He is not, in the eye of the law and of the constitution, thus twice punished for the same offense, for the action to fix the status of the goods is not against him."

In the case of U. S. v. Three Copper Stills, etc., 47 Fed. Rep. 495, Judge Barr of Kentucky adopts this view of the law in a case arising under the internal revenue law, and in the course of an able opinion he reviews the decisions in U. S. v. McKee and Coffey v. U. S., and arrives at the conclusion that in neither case did the court intend to declare or intimate that the proceedings in rem, taken to forfeit property, was putting the offender "twice in jeopardy of life or limb," within the meaning of the constitutional prohibition. These authorities would seem to be conclusive of the question now under consideration, but for the reliance placed by counsel for the defendant upon the decision of Judge Ross, of the southern district of California, in the case of U. S. v. One Distillery, 43 Fed. Rep. 846. An examination of that case will show, however, that, like the other cases cited in support of the defendant's plea, it presents a state of facts necessarily limiting the law of the case. The proceedings were under the internal revenue laws. A corporation was engaged in distilling. The secretary of the corporation, who was a stockholder, was indicted, tried, and convicted in 1888 for the violation of certain provisions of the law and regulations relating to the business operation of the distillery, alleged to have been committed in 1887. Proceedings in rem were also taken in 1888 to forfeit the distillery property for these alleged violations of law. Claimants appeared and filed an answer, alleging their ownership of the property in partnership, and its purchase by them at a public sale, in good faith, and for a valuable consideration, after the alleged violations of law. They also alleged that they made large and expensive additions to the property, admitted that they were owners of stock in the original corporation, but denied that they had any knowledge of the alleged frauds on the part of the corporation or its officers, or ever heard of them until after the seizure of their property by the collector. They denied that the brandy and alcohol found on the premises at the time of the seizure constituted any part of the property alleged to have been in possession of the corporation at the time of the violations of law charged against the corporation. They alleged that, in order to secure the release

of their property from seizure and prevent its sale, and save further loss and damage by the suspension of their business, they were compelled to pay, and did pay under protest, to the collector, the sum of $3,392, alleged to have been due to the government by reason of the failure of the corporation to comply with the rules and regulations of the revenue department in 1887. By an amended answer the claimants set up the further defense that the secretary of the corporation had been indicted and tried upon an indictment containing five separate counts, charging him with unlawful acts against the revenue laws while he was the secretary of the distillery company; that upon this indictment he was convicted upon the first count and acquitted as to the other four. The district attorney demurred to this answer, and the demurrer was overruled, the court holding that the same fraudulent acts and omissions that were introduced in evidence in support of the indictment against the secretary of the corporation were presented as grounds of forfeiture in the proceedings in rem against the property; that the right which the government was seeking to enforce in the forfeiture proceedings was a right which vested at the time the fraudulent acts were committed by the secretary, while he was a stockholder in the corporation, and interested in every part and parcel of the property; and to enforce this right was to take his property, and punish him twice.

Without expressing an opinion as to whether the action for a forfeiture might not have been maintained under the statute in that case, it is sufficient for the present purpose to observe that it appears from the statement of the case made by the court that the proceedings in rem involved a retrial of the same issues between the same parties, and in this important particular the case differs from the one at bar. Here the defendant is charged with the violation of section 11 of the act of July 5, 1884, in aiding and abetting the landing in the United States of Chinese laborers from a foreign port or place. It is true the indictment sets forth that he so aided and abetted the landing of such Chinese laborers by furnishing them transportation on the steam schooner Louis Olsen from a foreign port to the United States, and this is substantially the offense charged against the master of the vessel in the second count of the libel of information upon which the vessel was forfeited, but it needs no argument to show that more than one person might be guilty of the offense of aiding and abetting the commission of a crime of this character by the use of the same means. Manifestly, the government will have to show upon the trial of this indictment, either by direct testimony or by evidence from which the fact may be inferred, that the defendant had guilty knowledge of the illegal employment of his vessel, and that he did, independently of the master of the vessel, in fact aid and abet the landing in the United States of Chinese laborers from a foreign port or place. In this view of the case the plea in bar is not sufficient, and the demurrer must be sustained, and it is so ordered.