## KETCHUM *v.* BUCKLEY.

Where the President, at the close of hostilities, appointed a military governor of one of the States, the people whereof had been in rebellion against the United States, — *Held*, that such appointment did not change the general laws of the State then in force for the settlement of the estates of deceased persons, nor remove from office those who were at the time charged by law with public duties in that behalf.

ERROR to the Supreme Court of the State of Alabama.

In accordance with a special statute of Alabama, authorizing the appointment of a general administrator and general guardian for Mobile County, and for other purposes, approved Dec. 14, 1859, Wesley W. McGuire having been duly appointed to that office for the term of four years, he, March 7, 1864, made and delivered to the probate judge of the county his bond, in the penal sum of $150,000, conditioned according to law, with

Ketchum and others as his sureties thereon.    Letters of admin-
istration were granted to him Sept. 21, 1865, upon the estate
of William Buckley, deceased, by the Probate Court of said
county, by virtue whereof he administered upon the estate.
In May, 1869, in answer to a citation served upon him at the
instance of the heirs of Buckley, he made a final settlement of
his administration of the estate, and decrees were entered
against him for the sums due to each of them respectively.
Executions were issued on the decrees, and returned " no prop-
erty found."    George W. Buckley, one of said heirs, thereupon
brought suit in the Circuit Court of Mobile County for the sum
due to him by said decree, alleging that for the *devastavit* of
the assets of the deceased, committed by the said McGuire, he
and the other defendants, his sureties, were liable on the bond.

McGuire died after the commencement of this suit.    His
sureties set up that at the time of his appointment Alabama,
as one of the so-called Confederate States, was at open war
with the United States, but that before June 20, 1865, the
Confederate government was subdued, the insurrectionary gov-
ernment of the State overthrown, and her entire people under
martial law ; that the President, in his proclamation of June 21,
1865 (13 Stat. 767), declared that the rebellion had " deprived
the people of the State of Alabama of all civil government ; "
that he appointed Lewis E. Parsons governor, and authorized
him to organize civil government in the State ; that Parsons,
in pursuance of the proclamation, and by virtue of the author-
ity thereby conferred, called a convention of the people to be
elected as therein prescribed to meet at Montgomery, to inau-
gurate civil government in the State ; that he retained in office
by name all justices of the peace and certain other officers, but
declared that sheriffs and judges of the Probate Court were only
retained until others should be appointed upon application of
the people of the respective counties, but he authorized them to
continue to discharge the duties of their respective offices upon
taking the oath of fidelity to the United States; that George
W. Bond had been elected probate judge of that county in
May, 1861, for the term of six years, and was in office when
the insurrectionary State government was overthrown; that
said Parsons appointed said Bond to the office of probate

judge; that the office of said McGuire as general adminis-
trator and general guardian had, by reason of the premises,
ceased before the letters of administration were granted to
him on the estate of said Buckley; that he was not named in
the proclamation as one of the officers retained; that the grant
of the letters to him was therefore void; and that his sureties
were not liable for his administration of said estate.

The Circuit Court held, on demurrer, the defence to be in-
sufficient to bar the suit. Judgment was rendered for the
plaintiff, and it having been affirmed by the Supreme Court,
the defendants sued out this writ of error.

*Mr. Thomas J. Price,* for the defendant in error, moved to
dismiss the writ for want of jurisdiction, and to affirm the
judgment below.

*Mr. Philip Phillips* and *Mr. E. S. Dargan,* contra.

MR. CHIEF JUSTICE WAITE delivered the opinion of the
court.

We are not willing to hear an argument on the only possible
Federal question presented by this case. It is now settled law
in this court that during the late civil war " the same general
form of government, the same general law for the administra-
tion of justice and the protection of private rights, which had
existed in the States prior to the rebellion, remained during its
continuance and afterwards. As far as the acts of the States
did not impair or tend to impair the supremacy of the national
authority, or the just rights of the citizens, under the Consti-
tution, they are in general to be treated as valid and binding."
*Williams* v. *Bruffy,* 96 U. S. 176; *Horn* v. *Lockhart et al.,*
17 Wall. 570; *Sprott* v. *United States,* 20 id. 459; *Texas*
v. *White,* 7 id. 700. The appointment by the President of a
military governor for the State at the close of hostilities did not
of itself change the general laws then in force for the settlement
of the estates of deceased persons, and did not remove from
office those who were at the time charged by law with public
duties in that behalf. It is not alleged that the governor after
his appointment undertook by any positive act to remove
McGuire from the position he occupied as general adminis-
trator, or that McGuire himself at any time ceased to perform

the duties of his office by reason of what was done by the President or others towards the restoration of the State to its political rights under the Constitution of the United States. From all that appears in the record, he continued to act during the whole of his term as general administrator of the county, notwithstanding the changes that were going on in the other departments of the State government. Under these circumstances, it is so clear that the judgment of the court below was right, that we grant the motion to affirm.

*Judgment affirmed*