# SANTIAGO v. NOGUERAS.

## ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR PORTO RICO.

No. 127. Submitted April 7, 1909.—Decided May 24, 1909.

By the ratifications of the treaty of peace of 1898 with Spain, Porto Rico ceased to be subject to that country and became subject to the legislative power of Congress; but, pending the action of Congress, and the necessary delay in establishing civil government, there was no interregnum, and the authority to govern the territory ceded by the treaty was, by the law applicable to conquest and cession, under the military control of the President as Commander-in-Chief. *Cross v. Harrison*, 16 How. 164.

The military authority in control of ceded conquered territory at the time of a treaty of peace continues, if not dissolved by the Commander-in-Chief, until legislatively changed; nor is there any presumption of a contrary intention from the inaction of the legislature. Whatever the cause of delay in legislation it must be presumed that the delay was consistent with the true policy of the Government. *Cross v. Harrison*, 16 How. 164.

The authority of a military government continued after treaty of peace ceding the conquered territory, though not unlimited, is of large extent, and includes the power to establish courts of justice. *Leitensdorfer v. Webb*, 20 How. 176.

The military government in Porto Rico at the time of the ratification of the treaty of peace continued until superseded by the organic act; and it had power to establish the United States Provisional Court, and that court had jurisdiction to render the judgment involved in this case.

Under the provision of the order establishing the Provisional Court of Porto Rico that it have jurisdiction of controversies between different states and of foreign states, it had jurisdiction of a controversy between a subject of Spain and a resident of Porto Rico.

The service of the summons in this case by delivering the same at defendant's usual place of abode into the hands of his wife being strictly in accord with the procedure established by the court, the court had jurisdiction to enter judgment by default.

Whether the court lost jurisdiction, after having properly obtained it,
by disregarding rules of procedure is not open in a collateral attack.
2 Porto Rico, 467, affirmed.

THE facts are stated in the opinion.

*Mr. Francis H. Dexter* for plaintiffs in error:

Plaintiffs in error challenge the power of the Provisional
Court and maintain that under the circumstances then exist-
ing, considering the institutions and laws of the United States
and the condition of peace then prevailing, the President had
no power to create such a court. The treaty of peace had been
ratified and the courts of the Island were being conducted reg-
ularly and normally, in accordance with the local laws, which
had been ratified and sanctioned by the military government.
Magoon's Reports, p. 13.

Even if the military government had the power on June 27,
1899, to create courts for the trial of all kinds of cases, civil or
criminal, in addition to, or substitution of, ordinary courts
then in existence in the Island, General Orders, No. 88, Series
of 1899, creating the Provisional Court, cannot be construed
to sustain the jurisdiction of said court over the original cases
against which relief is sought. By such order (although vague
in its terms) the only construction to be reasonably made thereof
is that with respect to civil cases the jurisdiction of the Provi-
sional Court was limited to such jurisdiction as Circuit and Dis-
trict Courts of the United States at the time possessed under
the Constitution and laws of the United States then in force.

The Provisional Court did not have jurisdiction of the cases
complained of, because they were not such as a Circuit Court or
District Court of the United States should have had jurisdic-
tion over. In all of the cases complained of it appears that the
plaintiff was a subject of the King of Spain and that the de-
fendant was a citizen and resident of Porto Rico.

The proceedings in the Provisional Court were in complete
disregard of and in opposition to the Code of Civil Procedure
then in force, and that court had no power to make arbitrary

rules of procedure different from those provided for in the general law.

Mr. *Charles Hartzell* and Mr. *Manuel Rodriguez-Serra* for defendants in error:

The Provisional Court created by the military governor of Porto Rico was properly and legally established. See General Order 101, issued by the President of the United States, July 13, 1898; General Orders No. 1, issued by the commanding general of the American army in Porto Rico, October 18, 1898; The Organic Act for Porto Rico, §§ 8, 33; Glenn on International Law, p. 218; *New Orleans* v. *Steamship Co.*, 20 Wall. 387; *Downes* v. *Bidwell*, 182 U. S. 244.

The President of the United States, as the Commander-in-Chief and by virtue of his other attributes of authority, and as the representative of the will of the Government of the United States, was in supreme control of, and the authority over, the Island of Porto Rico from the time of the establishment of the military occupation in 1898, until the time when Congress, by means of the organic act, provided the first civil government for the Island. If this is not true, then where did the authority lie for governing the Island during that period of time? The treaty of peace concluded between the United States and Spain in December, 1898, and ratified and promulgated in April, 1899, made no provision for the temporary government of the Island pending the action of Congress in the premises, the only reference to judicial proceedings being contained in art. 18, the second paragraph of which provided that civil suits pending and undetermined at the date of the treaty shall be prosecuted to judgment before the court in which they may be pending or in the court that may be substituted therefor. This paragraph of the treaty demonstrates that it was even then contemplated that new courts might be substituted by the United States for the determination of actions which had already been brought and were then pending in the courts of Porto Rico.

No power or authority existed for the Government of Porto Rico after the American occupation, and prior to the passage of the organic act, except the military power, which had supreme authority in accordance with the authority which we have quoted, and that the direct recognition of the Provisional Court by the organic act, and the mandatory provision for the continuance of pending proceedings in the Provisional Court to be carried out by the United States District Court for Porto Rico, which was established by said organic act, must definitely determine the legal existence and validity of the acts of the Provisional Court within the scope of its jurisdiction as provided in the general order creating it.

MR. JUSTICE MOODY delivered the opinion of the court.

The plaintiffs in error brought in the District Court of the United States for Porto Rico an action for the recovery of certain parcels of land held by the defendants in error. There was judgment for the defendants in the court below, and the case is here upon writ of error. We need pay attention only to such facts as will make clear the question which we think is decisive of the case.

One of the plaintiffs once owned the lands in dispute, but they were sold upon an execution issued upon a judgment rendered against him by the United States Provisional Court. The defendants, by mesne conveyances, hold the title conveyed by the execution sale. The plaintiffs attack that title solely upon the grounds that the United States Provisional Court had no lawful existence, and if lawfully constituted was entirely without jurisdiction to render the judgment which it did, and that for the one reason or the other the judgment is a nullity everywhere.

The ratifications of the treaty of peace by which Porto Rico was ceded to the United States were exchanged April 11, 1899. 30 Stat. 1754. The act of Congress establishing a civil government in Porto Rico, passed April 12, 1900, 31 Stat. 77, c. 191, took effect on May 1 of that year. Between these two dates,

on June 27, 1899, the United States Provisional Court, here in question, was established by military authority, with the approval of the President, by General Order, No. 88, series of 1899. The parts of the order material here follow:

"I. In view of the existing and steadily increasing legal business requiring judicial determination, which does not fall within the jurisdiction of the local insular courts, such as smuggling goods in evasion of revenue laws, larceny of United States property, controversies between citizens of different States and of foreign States, violation of the United States postal law, etc., etc., and pursuant to authority from the President of the United States, conveyed by endorsement of April 14, 1899, from the Acting Secretary of War, and after full conference with the Supreme Court and members of the Bar of the Island, a United States Provisional Court is hereby established for the Department of Porto Rico.

"II. The judicial power of the Provisional Court hereby established shall extend to all cases which would be properly cognizable by the Circuit or District Courts of the United States under the Constitution, and to all common law offenses within the restrictions hereinafter specified."

"X. In civil actions when the amount in controversy is fifty dollars ($50.00) or over, and in which any of the classes of persons above enumerated in paragraph VIII are parties, or in which the parties litigant by stipulation invoke its jurisdiction, shall be brought in the Provisional Court: Provided, That in the determination of all suits to which Porto Ricans are parties, or of suits arising from contracts which have been or shall be made under the provisions of Spanish or Porto Rican laws, the court shall, as far as practicable, conform to the precedents and decisions of the United States courts in similar cases which have been tried and determined in territory formerly acquired by the United States from Spain or Mexico. In all other civil actions the case shall lie within the jurisdiction of the proper insular court as now provided by local law."

By paragraph XI, the losing party is afforded an opportunity

to apply to this court for a "writ of certiorari or other suitable process to review such judgment or decree." At the time this order was issued peace prevailed in Porto Rico and the courts established under Spanish sovereignty were open.

The plaintiffs contend that the military power, acting by the authority of the President as Commander-in-Chief, does not warrant the creation of the United States Provisional Court.

By the ratifications of the treaty of peace, Porto Rico ceased to be subject to the crown of Spain and became subject to the legislative power of Congress. But the civil government of the United States cannot extend immediately and of its own force over conquered and ceded territory. Theoretically, Congress might prepare and enact a scheme of civil government to take effect immediately upon the cession, but, practically, there always have been delays and always will be. Time is required for a study of the situation and for the maturing and enacting of an adequate scheme of civil government. In the meantime, pending the action of Congress, there is no civil power under our system of government, not even that of the President as civil executive, which can take the place of the government which has ceased to exist by the cession. Is it possible that, under such circumstances, there must be an interregnum? We think clearly not. The authority to govern such ceded territory is found in the laws applicable to conquest and cession. That authority is the military power, under the control of the President as Commander-in-Chief. In the case of *Cross* v. *Harrison*, 16 How. 164, a situation of this kind was referred to in the opinion of the court, where it said: "It (the military authority) was the government when the territory was ceded as a conquest; and it did not cease, as a matter of course, or as a necessary consequence of the restoration of peace. The President might have dissolved it by withdrawing the army and navy officers who administered it, but he did not do so. Congress could have put an end to it, but that was not done. The right inference from the inaction of both is, that it was meant to be continued until it had been legislatively changed.

No presumption of a contrary intention can be made. Whatever may have been the causes of delay, it must be presumed that the delay was consistent with the true policy of the Government," pp. 193, 194. And see *Leitensdorfer* v. *Webb*, 20 How. 176, and opinion of Mr. Justice Gray in *Downes* v. *Bidwell*, 182 U. S. 244, 345.

The authority of a military government during the period between the cession and the action of Congress, like the authority of the same government before the cession, is of large, though it may not be of unlimited, extent. In fact, certain limits, not material here, were put upon it in *Dooley* v. *United States*, 182 U. S. 222, and *Lincoln* v. *United States*, 197 U. S. 419, though it was said in the *Dooley case*, p. 234: "We have no doubt, however, that, from the necessities of the case, the right to administer the government of Porto Rico continued in the military commander after the ratification of the treaty, and until further action by Congress," citing *Cross* v. *Harrison*, *supra*.

But whatever may be the limits of the military power, it certainly must include the authority to establish courts of justice, which are so essential a part of any government. So, it seems to have been thought in *Leitensdorfer* v. *Webb*, *supra*. With this thought in mind, the military power not only established this particular court in Porto Rico, but as well a system of courts, which took the place of the courts under Spanish sovereignty, and were continued by the organic act. The same course was pursued in the Philippine Islands.

By § 34 of the organic act (31 Stat. 77), a District Court of the United States for Porto Rico was created, and it was provided that the same "shall be the successor to the United States provisional court established by General Orders numbered Eighty-eight, promulgated by Brigadier General Davis, United States Volunteers, and shall take possession of all records of that Court, and take jurisdiction of all cases and proceedings pending therein, and said United States provisional court is hereby discontinued."

The record shows that in conformity with this provision the newly-created District Court of the United States for Porto Rico issued an execution upon this judgment of the United States Provisional Court, and the property was sold upon that execution.

A further contention of the plaintiffs is, that the United States Provisional Court was without jurisdiction, because the diversity of citizenship made requisite by the order did not exist. Assuming, without deciding, that this question is open at this time, we are of the opinion that the citizenship of the parties to the action in the United States Provisional Court was such as to give that court jurisdiction. The plaintiff there was a Spanish subject and the defendant a citizen and a resident of Porto Rico. Taking the second and the tenth paragraphs into consideration and the classes of persons enumerated in paragraph 8, which included "foreigners," there can be no doubt that the case was within the jurisdiction which the order sought to confer. In view of the whole order, we think that a controversy between a Porto Rican and a Spaniard furnished the diversity of citizenship which the order made jurisdictional. Undoubtedly, one of the main purposes of the establishment of this court was to afford a court where Spanish subjects could obtain justice against Porto Ricans at a time when it might be feared that the embers of the old disputes between Spaniards and Porto Ricans were still aflame.

The plaintiffs, one of whom was the defendant in the action before the United States Provisional Court, further suggest that defendant was not served with process and never appeared, and that the judgment rendered against him by default was a nullity. This point does not appear to be pressed and there is nothing in it. The service was in strict accordance with the procedure established by the court and by delivering a summons at the usual place of abode of the defendant into the hands of his wife.

The plaintiffs further contend that if the United States Provisional Court had jurisdiction of the case and the parties,

in some way it had lost it, because in the course of its proceedings it disregarded certain provisions of the Code of Civil Procedure which were binding upon it. But clearly no such question is open on a collateral attack, such at this is, and we need delay no further upon that point.

There were other questions in the case, which the view we have taken of it render it unnecessary to consider.

We are of the opinion that the judgment of the United States Provisional Court was not a nullity and that the sale on execution, under which the defendants claim, conveyed to them a good title. As the court below took the same view, its judgment is

Affirmed.

By agreement No. 128, Santiago v. Gonzalez y Rodriguez; No. 129, Santiago v. Moscoso; No. 130, Santiago v. Ana Semidey, widow of Antonio Costa, abide the result of this case, and corresponding judgments will be entered in them.