**MADSEN v. KINSELLA, Warden.**

**No. 6220.**

United States Court of Appeals Fourth Circuit.

Argued March 12, 1951.

Decided April 2, 1951.

Joseph S. Robinson, New York City (Dayton M. Harrington, James D. Graham, Jr., and Harrington & Graham, all of Washington, D. C., John C. Morrison, and Jackson, Kelly, Morrison & Moxley, all of Charleston, W. Va., on brief), for appellant.

John M. Raymond, Asst. Legal Adviser, Department of State, Washington, D. C. (A. Garnett Thompson, U. S. Atty., Charleston, W. Va., and Joseph M. Sweeney, Asst. Legal Adviser, United States State Department, Washington, D. C., on brief) for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

PARKER, Chief Judge.

This is an appeal from an order refusing to discharge appellant in a habeas corpus proceeding. Appellant was convicted of murdering her husband, an officer in the American Army, in the American Zone of Germany, by a trial court set up under the authority of the United States in the occupied territory. The conviction was affirmed but the sentence slightly modified by a reviewing court, similarly set up in the occupied territory under authority of the United States, and appellant was sent to the Federal Reformatory for Women at Alderson, West Virginia, for the service of the sentence imposed upon her. She sought release from this imprisonment by suing out a writ of habeas corpus; but her petition was denied by the District Judge in an able and comprehensive opinion which fully sets forth the facts of the case, the constitution of the occupation courts and the law under which appellant was convicted. See Madsen v. Kinsella, D.C., 93 F.Supp. 319.

■■ Little need be added here to what was said by the District Judge. There can be no question as to the power of the United States, as an incident of the occupation of Germany, to set up courts in the occupied territory and to give such courts jurisdiction over American nationals in the terri-

tory. "The establishment of such courts is but the exercise of the ordinary rights of conquest." Mechanics & Traders Bank v. Union Bank, 22 Wall. 276, 296, 22 L.Ed. 871. It is the duty of an occupying power to provide, as far as possible, for the security of persons and property and the administration of justice within the territory; and this is a military duty which devolves upon the President, as commander in chief, who is entrusted as such with the direction of the military force by which the occupation is held. Santiago v. Nogueras, 214 U. S. 260, 266, 29 S.Ct. 608, 53 L.Ed. 989; The Grapeshot, 9 Wall. 129, 19 L.Ed. 651; Leitensdorfer v. Webb, 20 How. 176, 15 L. Ed. 891; Cross v. Harrison, 16 How. 164, 189, 14 L.Ed. 889.

■ We think it entirely immaterial that the President at the time of the trial of appellant was carrying on military government in the occupied zone of Germany through the state department instead of through the army and was using civilians instead of army personnel as judges of the courts. It was for the President, as commander in chief, to use such governmental department or agency as he thought proper in governing the conquered territory; and Congress in making appropriations to the army for the expenses of the occupation expressly authorized the President to transfer to other departments functions provided for under the appropriations. Act Oct. 6, 1949, P.L. 327, 81st Cong. 63 Stat. 709, c. 621. While military government, under that name, terminated September 21, 1949, the Office of the United States High Commissioner for Germany took over its functions and exercised the powers and authority of a "military" government, i. e. a government based on a military occupation. As stated in Winthrop, Military Law and Precedents, pp. 1246–1248:

"The authority for military government is the fact of occupation * * *. There must be a full possession, a firm holding, a government de facto.

"Military government, thus founded, is an exercise of sovereignty, and as such dominates the country which is its theatre in all branches of administration. Whether administered by officers of the army of the belligerent, or by civilians left in office or appointed by him for the purpose, it is the government of and for all the inhabitants, native or foreign, wholly superseding the local law and civil authority except in so far as the same may be permitted by him to subsist. * * *

"The status of military government continues from the inception of the actual occupation till the invader is expelled by force of arms, or himself abandons his conquest, or till, under a treaty of peace, the country is restored to its original allegiance or becomes incorporated with the domain of the prevailing belligerent."

■ And we think it equally clear that the occupation courts had authority to try appellant for murder under the law of Germany. It is the general law that local criminal law in an occupied area continues to bind civilians unless changed by the occupying power. Dow v. Johnson, 100 U.S. 158, 166, 25 L.Ed. 632; Ketchem v. Buckley, 99 U.S. 188, 190, 25 L.Ed. 473. In addition to this, a proclamation of General Eisenhower of September 19, 1945, 12 Federal Register 6997, provided that German law should be applicable in the occupied territory until repealed or superseded by a new law enacted by the military government. German courts were forbidden to exercise jurisdiction in criminal cases involving wide classes of persons, including not only the armed forces of the United Nations but also "any person serving with any such forces or a dependent accompanying any of them" or "any national of the United Nations" (12 Federal Register 2192); and military government courts were given jurisdiction of all offenses of civilians under the laws of the occupied territory. 12 Federal Register 2190. See U. S. Military Government v. Ybarbo, 1 Court of Appeals Reports (Germany) 207.

■ Appellant's principal contention is that exclusive jurisdiction to try her for the crime of murder was vested in the courts martial of the army, under the 92nd Article of War, 10 U.S.C.A. § 1564, since she claims that she was a person accompanying the army within the meaning of the 2nd Article of War, 10 U.S.C.A. § 1473. There is grave doubt whether a wife living

with her officer husband is a person accompanying the army within the meaning of that article; but we need not go into the question, since we think it clear that, even if it be assumed that appellant occupied that status, the jurisdiction vested in courts martial over her was not exclusive and she was properly tried by the occupation court.

There can be no question but that prior to the 1916 amendments to the articles of war a military court, such as that by which appellant was tried, would have had jurisdiction to try her. Neely v. Henkel, 180 U.S. 109, 21 S.Ct. 302, 45 L.Ed. 448; Ex parte Ortiz, C.C., 100 F. 955; United States v. Reiter, 27 Fed.Cas. page 768, No. 16,146. As said in the Digest of Opinions of the Judge Advocate General of the Army (1912) pp. 1066–7:

"By a practice dating from 1847 and renewed and firmly established during the Civil War, military commissions have become adopted as authorized tribunals in this country in time of war. They are simply criminal war courts, resorted to for the reason that the jurisdiction of courts martial, creatures as they are of statute, is restricted by law, and can not be extended to include certain classes of offenses which in war would go unpunished in the absence of a provisional forum for the trial of the offenders * * *. Military commissions are authorized by the laws of war to exercise jurisdiction over two classes of offenses, committed, (1) in the enemy's country during its occupation by our armies and while it remains under military government, or (2) in a locality, not within the enemy's country or necessarily within the theater of war, in which martial law has been established by competent authority. The two classes of offenses are: I. Violations of the laws of war. II. Civil crimes, which, because the civil authority is superseded by the military and the civil courts are closed or their functions suspended, can not be taken cognizance of by the ordinary tribunals. In other words, the military commission, besides exercising under the laws of war a jurisdiction of offenses peculiar to war, may act also as a substitute, for the time, for the regular criminal judicature of the State, or district."

[redacted] Article 92 of the Articles of War was amended in 1916 to provide that any person subject to military law who commits murder shall suffer death or imprisonment for life as a court martial may direct; and Article 12, 10 U.S.C.A. § 1483, was amended to provide that courts martial should have "power to try any person subject to military law for any crime or offense made punishable by these articles". It was not provided, however, that the jurisdiction of the courts martial should be exclusive and the contrary was expressly provided by Article 15, which was new. That article provides, 10 U.S.C.A. § 1486: "The provisions of these articles conferring jurisdiction upon courts-martial shall not be construed as depriving military commissions, provost courts, or other military tribunals of concurrent jurisdiction in respect of offenders or offenses that by statute or by the law of war may be triable by such military commissions provost courts, or other military tribunals."

The purpose of the section was explained before the Subcommittee on Military Affairs of the Senate by General Crowder in 1916 (see note 31, 327 U.S. 65, 66 S.Ct. 340, 371, 90 L.Ed. 499) as follows:

"'Article 15 is new. We have included in article 2 as subject to military law a number of persons who are also subject to trial by military commissions. A military commission is our common-law war court. It has no statutory existence, though it is recognized by statute law. As long as the articles embraced them in the designation "persons subject to military law," and provided that they might be tried by court-martial, I was afraid that, having made a special provision for their trial by court-martial, it might be held that the provision operated to exclude trials by military commission and other war courts; so this new article was introduced. * * *'

"It just saves to these war courts the jurisdiction they now have and makes it a concurrent jurisdiction with courts-martial, so that the military commander in the field in time of war will be at liberty to employ either form of court that happens to be convenient."

Referring to this section, the Supreme Court, speaking through Chief Justice Stone in In re Yamashita 327 U.S. 1, 7, 66 S.Ct. 340, 90 L.Ed. 499, said:

"Article 15 declares that 'the provisions of these articles conferring jurisdiction upon courts-martial shall not be construed as depriving military commissions * * * or other military tribunals of concurrent jurisdiction in respect of offenders or offenses that by statute or by the law of war may be triable by such military commissions * * * or other military tribunals.' See a similar provision of the Espionage Act of 1917, 50 U.S.C. § 38, 50 U.S.C.A. § 38. Article 2 includes among those persons subject to the Articles of War the personnel of our own military establishment. But this, as Article 12 indicates, does not exclude from the class of persons subject to trial by military commissions 'any other person who by the law of war is subject to trial by military tribunals,' and who, under Article 12, may be tried by court martial, or under Article 15 by military commission."

The precise question here involved was passed upon in U. S. Military Government v. Ybarbo, supra, by the United States Court of Appeals in the occupation area. Chief Judge Clark, speaking for the court in that case, said:

"The Military Government court in which the defendant has been tried seems to be clearly either a 'military commission' or another 'military tribunal'. Under the Common Law of War, Military Commissions (or as they are here called, Military Government Courts) had jurisdiction over soldiers and civilians. That jurisdiction was expressively saved to them by Article 15 of the Articles of War. The earliest commissions established by General Scott during the occupation of Mexico in 1847 exercised jurisdiction over all persons for civil crimes. During the civil war, prior to the passage of the Enrollment Act of 3 March 1863 such commissions functioned under the law of war and were convened as early as 1861. General McClellan at Yorktown ordered that 'acts commonly recognized as crimes against society by soldiers, officers and other persons connected with the Army' were 'punishable by a Court or Military Commission.' After the Enrollment Act of 1863 military commissions continued to exercise their common law jurisdiction. Winthrop cites many cases of soldiers and civilians who were tried by Military Commissions under the reconstruction acts. * * *

"When Congress enacted the present Article of War 15, it would seem that it did so with the full knowledge that it was saving to Military Commissions the jurisdiction it had theretofore exercised over soldiers as well as civilians under the Law of War."

Coleman v. Tennessee, 97 U.S. 509, 24 L.Ed. 1118, and Dow v. Johnson, 100 U.S. 158, 25 L.Ed. 632, upon which appellant relies, are not in point. They hold merely that courts martial of the army have exclusive jurisdiction to try members of the armed forces for crimes alleged to have been committed by them while engaged in the occupation and that they are not subject to the laws or jurisdiction of the courts of the enemy. There is nothing in this to support the contention that civilians following the army may not be tried for offenses which they commit by military courts or commissions set up under the authority of the commander in chief.

■ Contention is made that the sentence of imprisonment was illegal; but the contention is entirely without merit. Defendant was guilty of a major crime, which under the law of Germany was punishable by death or imprisonment for life. She has no ground of complaint that the sentence of imprisonment was for only fifteen years or that it was in a penitentiary designated by the Attorney General pursuant to the judgment of the court. Confinement in a penitentiary in the United States of those convicted by military tribunals is expressly authorized by statute. 10 U.S.C.A. § 1452. In view of this, the distinction which appellant attempts to draw between confinement and imprisonment under German law has no relevance.

For the reasons stated, the judgment appealed from will be affirmed.

Affirmed.