On the Merits.
Act No. 221 of 1902, p. 451, is entitled and reads in part as follows:
“An act to amend and re-enact sections 1211 and 2778 of the Revised Statutes of the state of Louisiana, relative to granting or withholding licenses for the sale of intoxicating liquors.
“Section 1. * * * That sections 1211 and 277S of the Revised Statutes of 1870 be amended and re-enacted so as to read:
“ ‘That police juries of the several parishes of the state, the municipal authorities of the several villages, towns and cities, and the city council of the city of New Orleans shall have exclusive power to make such rules and regulations for the sale or the prohibition of the sale of intoxicating liquors, as they may deem advisable, and to grant or withhold licenses from drinking houses and shops within the limit of the city, parish, ward of a parish, town or village, as a majority of the legal voters * * * may determine. * * . * ’ ”
Act No. 315 of 1908, p. 482, provides:
_ “Section 1. * * * That * * * the police juries of the parishes shall have full power and authority to enforce such ordinances as they are authorized to phss, by fine or imprisonment, or both, to prosecute by criminal process of indictment or information, or by fine or forfeiture, to be collected by civil process before any court of competent jurisdiction.
“Sec. 2. * * * That no fine shall exceed 8100 and imprisonment shall not exceed 30 days in parish jail, or both, at the discretion of the court.”
The defendant now before the court is prosecuted under a bill of information, filed March 10, 1914, which charges that, on that (or possibly an earlier) day—
“being then and there the lessee or owner of a certain room located in the upstairs of building No. 327 Texas street, Shreveport, * * * [he! unlawfully, did keep a blind tiger, and maintain a public nuisance, by then and there keeping in said room a large quantity of whisky and beer, for sale, barter, or exchange, or giving away, to wit: 1 cask of quart bottles of Yellow Stone whisky; % cask of % bottles of Hill & Hill whisky; % cask of Budweiser beer-contrary to the form of the statute of the state of Louisiana in such ease made and provided, and against the peace and dignity of the same, in violation of the police jury ordinance of Caddo parish, and” (sic).
This prosecution is conducted in the name and on behalf of the state of Louisiana, by the district attorney for the First judicial district, but is conceded to be a prosecution under “police jury ordinance of Caddo parish” and the “statute of the state of Louisiana,” referred to in the bill, meaning, as we take it, the statutes above quoted, which are regarded as the authority under- which, the ordinance was enacted. The ordinance bears date June 12, 1913, and is entitled and reads in part:
“An ordinance for the suppression of the blind tiger and the enforcement of the prohibition law in the parish of Caddo.
“Section 1. Be it ordained: * * * That any house, store, room or any other place where intoxicating liquors are kept for the purpose of sale, barter, exchange or giving away as a beverage, or where it is kept, whether for sale or not, in a place where near-beer is displayed or kept for sale, or in a place where gambling is permitted, shall be deemed a blind tiger, and the same is hereby declared to be a nuisance, and the owner of said room, together with all keepers, clerks * * * and the owner of the intoxicating liquors shall be deemed guilty of keeping a blind tiger and maintaining a public nuisance, ánd shall be prosecuted, by indictment or information, and, upon conviction, shall be fined not less than 8S0, nor more than 8100, and, in defanlt of payment, * !! * shall work out the same on the public roads * * * at the rate of one dollar per day, or shall suffer imprisonment not less than ten and not more than thirty days, or both, at the discretion of the court; and, for each 24 hours that said nuisance is maintained, it shall be deemed a separate offense.”
Section 2 provides that, when three reputable persons shall make oath, before a judge *883 or justice of the peace, that “he” has reason to believe, or does believe, that intoxicating liquors are being illicitly kept in any house, etc., for the purpose of illicitly disposing of the same, or in any place where near-beer is displayed, or where gambling is permitted, and describing the place, or pointing out the keeper, owner, or lessee thereof, it shall be the duty of the judge to issue a warrant directing the sheriff, or constable, to visit such place and ascertain the truth, and, if such officer shall find evidence of such illicit business, he shall arrest all persons found in charge, and the owner, keeper, clerk, or lessee of the premises, and the owner of the liquors, and carry them before a competent court, where they shall be prosecuted “by information or indictment,” and, if convicted, fined not less than $80, nor more than $100, and, in default of payment, shall work out the fine, at the rate of $1 per day, on the public .roads, or be imprisoned not less than 10 nor more than 30 days, or both, at the discretion of the court, and shall be ordered to abate the nuisance.
Section 3 provides that it shall be the duty of the officer making the search to seize any intoxicating liquors found by him, and bring them before the judge, and hold them as evidence, and, in the event of the conviction of the party charged, the judge shall order them destroyed.
Section 4 provides that, where liquors are so found, under circumstances indicating that the place is being kept as a grog or tippling shop, or for retailing liquors, the officer shall charge the parties implicated with “violating the prohibition law as well as keeping a blind tiger.”
Section 5 provides that, if the judge shall find that the parties charged are not guilty, the liquors seized shall be returned to them, save such as may have been used in determining whether they were intoxicating. Defendant’s conviction took place on July 9, 1914, and, sentence having been imposed on July 11, he appealed-, and lodged his appeal in this court on August 24, 1914.
In the meanwhile, on July 8, 1914, the Governor approved Act No. 146 of 1914, which is entitled and reads in part:
“An act to define and prohibit the keeping of a ‘blind tiger’; to provide for the search of same, and for the seizure and destruction of any spirituous, malt or intoxicating liquor found therein; to provide for the punishment of any violations of this act.
“Section 1. * * * That a ‘blind tiger’ is hereby defined to be any place in those subdivisions of the state where the sale of spirituous, malt, or intoxicant liquors is prohibited, where such spirituous, malt or intoxicant liquors are kept for sale, barter, exchange or' habitual giving away as a beverage in connection with any business conducted at such place.
“Sec. 2. * * * That the keeping of a ‘blind tiger’ is hereby prohibited, and whoever shall be guilty of violating this act shall be guilty of a misdemeanor.”
Section 3 provides for the issuance of a warrant and the searching of a place suspected of being a “blind tiger,” and the bringing into court of any person and intoxicating liquors there found.
“Sec. 4. * * * That whoever shall be found guilty of keeping a ‘blind tiger,’ in violation of this act shall be fined not less than two hundred dollars, nor more than five hundred dollars, and be imprisoned for not less than 30 days nor more than 6 months, and on default of the payment of the fine and costs he shall be imprisoned for not more than 6 months additional.
“Sec. 5. * * * That all laws and parts of laws in conflict herewith be and the same are hereby repealed.”
It is not disputed that the parish of Cad-do is one of those “subdivisions of the state where the sale of spirituous, malt, or intoxicating liquors is prohibited,” and it cannot, therefore, be denied that the statute last above quoted became operative in that parish when promulgated, and after defendant had been allowed his appeal; from which it follows, upon the face of the record (unless there be some sufficient reason, to the contrary), that he must be discharged, for, the law (in so far as it authorized the .particular ordinance in question) and the ordinance un *885 der which he was sentenced having been superseded by said statute, the sentence imposed thereunder cannot be sustained, and the statute, being ex post facto quoad the offense with which he is charged, requiring a severer penalty than the law then in force, and containing no saving clause, no sentence can be imposed thereunder.
“No conviction can take place for an offense after the statute creating it has been repealed. Therefore, if a prior law has been superseded by a statute inconsistent therewith, offenses already committed under the prior law cannot be punished, unless there is a saving clause, for the prior law is no longer in force, and the subsequent statute is not applicable to the offense already committed, because as to such offense it is ex post facto. There can be no legal conviction for an offense unless the act complained of be contrary to law at the time it is committed, nor can there be a judgment unless the law be in force at the time the indictment is found and judgment rendered thereunder.” McClain’s Or. Law, vol. 1, § 96.
“It has long been settled, on general principles, that, after the expiration or repeal of .a law, no penalty can be enforced, or punishment inflicted, for violations of the law, committed while it was in force.” Yeaton v. United States, 5 Cranch, 281, 3 L. Ed. 101.
See, also, Kring v. State of Missouri, 107 U. S. 221, 2 Sup. Ct. 443, 27 L. Ed. 506; State ex rel. Theus v. Hickman, 127 La. 442, 53 South. 680; State v. Jones, 127 La. 768, 53 South. 985; State v. Guillory, 127 La. 950, 54 South. 297; Clark’s Crim. Law, 26.
If, now, it be said that Act No. 146 of 1914 deals with an offense against the state, whilst the ordinance deals with an offense against the parish, that the same act may constitute an offense against both state and parish, and may be punished by either or both, and hence that the act does not repeal or supersede the ordinance, but that they should be held to stand together, the answer may be briefly stated as follows, to wit:
The parish of Caddo, like the other parishes into which the whole state of Louisiana has been divided, is one of the numerous agencies which the state has established, and in which it has, by various acts of the General Assembly, and especially the acts of 1902 and 1908 (hereinabove quoted), vested certain governmental authority, including the authority to enact laws upon the subject of the sale, and the prohibition of the sale (as the electors may decide), of intoxicating liquors, within its territorial limits. Both of the statutes last mentioned are of state-wide application, and are in no sense special, save, perhaps, as to the city of New Orleans, which is named in the act of 1908; and by virtue of the authority thereby conferred the ordinance, under which the defendant herein has been prosecuted and sentenced, was enacted. Let it be conceded, for the sake of argument (though the writer hereof is not of that opinion), that, consistently with the provision of our fundamental law, which reads, “Nor shall any person be twice put in jeopardy of life or liberty for the same offense, except on his own application for a new trial, or where there is a mistrial, or a motion in arrest of judgment is sustained,” it is competent for the General Assembly to declare that the same act which it denounces as an offense against the state may be denounced as a separate offense by every parish, city, town, village, commission, or board which it may authorize to enact ordinances or make rules and regulations, and within the jurisdiction of which the act may be committed, and that each of these agencies may initiate a separate prosecution and impose a separate penalty therefor; let all that be conceded, and yet it cannot be denied that the power remains in the General Assembly to withdraw such declaration, and to repeal or supersede the law wherein it is contained, and the ordinances, rules, or regulations enacted and promulgated pursuant to its authority, whenever it shall see fit so to do.
A large majority of the adjudged cases sustain the proposition:
“That the single act, being made punishable both by the state law and the municipal ordinance of the place wherein the act was commit *887 ted, constitutes two distinct and several offenses • — an offense against the state and an offense against the municipality.”
Those ¿djudications deal, however, with the ordinances of what the writers call “municipal corporations proper” — that is to say, the ordinances of chartered cities and towns —and the real basis upon which they rest seems to be the necessity for such ruling in the interest of the “crowded modern urban centers of population.” McQuillin’s Mun. Corp. vol. 2, p. 1866.
If there is any case to be found in which the rules, regulations, or ordinances of county authorities have been accorded similar recognition, it has escaped our rather careful investigation; and we draw the inference that the government of the thinly settled rural districts, constituting the main body of the state, is regarded as remaining more directly under the control of the lawmakers of the state, an inference that is strengthened when we consider the meagerness of the provisions that are usually made for legislation, and the enforcement of legislation, by county authorities, as compared with those made in behalf of the chartered cities and towns. Even in regard to the status of the “municipal ordinance proper,” however, and its relation to the proposition hereinabove stated, the jurisprudence of the country, taken as a whole, appears to be in rather an unsatisfactory condition, as may be seen from the following excerpt from the latest and most exhaustive treatise on Municipal Corporations that has come within our observation, to wit:
“No general rule can be laid down, respecting what matters are state and what are municipal, that will apply in all jurisdictions. This is usually made to depend, not alone upon the fundamental principles of decentralization in our system of government, and home rule for the local community, but as well upon the Constitution and course of legislation and judicial decision in the particular state. In no state is the line very accurately drawn where municipal power ends and state authority begins. This is especially true respecting offenses. * * *
“The decisions on this subject are numerous and conflicting. Perhaps on no single topic of municipal corporation law have there been so many discordant utterances, even by the same courts and the same individual judges. But the best-considered eases, especially the more recent ones, have properly extended the sphere of activity of the municipal corporation in dealing with police offenses. The necessity of thus enlarging municipal jurisdiction is obvious to the careful student of the conditions and needs of the crowded modern urban centers of population. The earlier conceptions of our courts on this subject are less definite and satisfactory. Under the several grants of municipal powers, which, in general terms, include the authority to enact all necessary ordinances to preserve the peace and advance the local government of the community, the local corporation cannot provide by ordinance for the punishment of an act constituting a misdemeanor or crime by state statute. The cases in the note fully illustrate the rule.”
And there follows a citation of a number of cases, including New Orleans v. Miller, 7 La. Ann. 761; State v. McNally, 48 La. Ann. 1450, 21 South. 27, 36 L. R. A. 533:
“It may only exercise such powers as legitimately belong to the local and.internal affairs of the municipality. In the performance of such functions much latitude is often permitted. But it is entirely competent for the Legislature to confer, in express terms, such powers as will enable the local corporation to declare by ordinance any given act an offense against its authority, notwithstanding such act has been made by statute a public offense and a crime against the state. And where the regulation of a specific matter has been thus expressly and exclusively given to the local corporation, whether it be intrinsically state or local, the corporation may exercise the power so conferred, unfettered, until, such time as it is legitimately withdrawn by the state. * * *
“The enforcement of the fundamental rule that the ordinance must be in harmony or at least not inconsistent with the state law, has been the source of much confusion on this subject. The true doctrine appears to be that whether the city may exercise control of state offenses must be determined by the legislative intent. And such intent must also decide the manner in which the power is to' be exercised, and whether such control is to be exclusive, or whether it is to be exercised concurrently with that of the state.
“The general doctrine, supported by the weight of authority, is that an act may be made a penal offense, under the statutes of the state, and that further penalties may be imposed for its commission or omission by municipal ordinance. But, to authorize such ordinance, the local corporation must possess sufficient charter- *889 powers, and such powers must be exercised in the manner conferred and consistent with the Constitution and laws of the state. The cases present some discord respecting the nature of the grant of power necessary to sustain such additional regulations. The question of power seems to be the chief source of conflict.”
McQuillin’s Municipal Corporations, vol. 2, pp. 1858, 1860, 1863.
From Cooley’s Constitutional Limitations (7th Ed.) p. 278, we take the following:
“2. Municipal laws must also be in harmony with the general laws of the state and with the provisions of the municipal charter. The charter, however, may expressly, or by necessary implication, exclude the general laws of the state on any particular subject, and allow the corporation to pass local laws at discretion, which may differ from the rule in force elsewhere.
“But, in these cases, the control of the state is not excluded, if the Legislature, afterwards, see fit to exercise it; nor will conferring a power upon a corporation to pass by-laws and impose penalties for the regulation of any specified subject necessarily supersede t'he state law on the same subject, but the state law and the bylaw may both stand together, if not inconsistent. Indeed, an act may be a penal offense under the laws of the state, and further penalties, under proper legislative authority, be imposed for its commission by municipal laws, and the enforcement of the one would not preclude the enforcement of the other.”
In McClain on Criminal Law, vol. 2, § 1217, p. 378, we find:
“As pointed out in the preceding section, there may be difficulty in determining whether a state statute, regulating the sale of liquor, continues in force in a city which, under the authority given it, passes ordinances respecting the same matter. In general, the power given to a city will not be deemed exclusive, but must be exercised in subordination to the general laws of the state.”
From Wharton’s Crim. Law (9th E'd.) vol. 1, § 293, p. 327, we take the following:
“Where an offense, in its entirety, is cognizable by two sovereigns, the first sovereign that takes possession of the defendant and undertakes the prosecution of the offense absorbs the case, as a general rule, which action, if bona fide and complete, is a bar to the action of the other sovereign.”
Note: “Wharton’s Cr. PI. & Pr. §§ 441. 442; Taylor v. Taintor, 16 Wall. 367 [21 L. Ed. 287]; [Coleman v. Tennessee] 97 U. S. 509 [24 L. Ed. 1118].
The remaining question is whether, in fact and law, the state has repealed or superseded the statutes ’ of 1902 and 1908 in so far as they purport to authorize the enactment of the ordinance under which defendant is prosecuted, and whether it has repealed or superseded that ordinance; and that question is to be determined according to the accepted canons which are applied to the interpretation and construction of laws.
The act of 1902, in its application to Caddo parish, as a parish in which the voters have determined that the sale of intoxicating liquors shall be prohibited, authorizes the police jury to make such rules and regulations as it may deem advisable to enforce the prohibition ; and in the exercise of that authority, and of the authority conferred by the act of 1908, the police jury enacted the ordinance here in question, defining and denouncing the offense of keeping a “blind tiger” and imposing certain penalties therefor. Something less than a year later the General Assembly passed Act 146 of the session of 1914, being an act to define and prohibit the keeping of a “blind tiger,” etc., declaring, among other things, that a “blind tiger” is hereby defined to be:
“Any place in those subdivisions of the state where the sale of * * * liquors is prohibited, where such * * * liquors are kept for sale, etc.
The definition and the penalty given and denounced by the act differ materially from those provided by the ordinance, and there is no doubt that the act was intended to be applied in all prohibition parishes, since it so declares in terms, and, unless it is to be so applied, it is entirely ineffective. On the other hand, being, as we hold, effective in Oaddo parish, it repeals by implication, or supersedes, all pre-existing and inconsistent or conflicting laws, purporting to deal with the same subject and operating in that parish, since it contains the last expression of *891 the will of the supreme lawmaking power of the state, and the ordinance in question is one Of those laws.
It is therefore ordered that the conviction and sentence appealed from be set aside, and the defendant discharged, without day.
PROVOSTY, LAND, and O’NIELL, JJ., concur in the decree, on the ground that the police jury was without authority to pass the ordinance in question. O’NIELL, J., however, is of the opinion that this court has no jurisdiction of the appeal, and will hand down reasons. See 67 South. 942.